UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **MICHIGAN URGENT CARE & PRIMARY CARE PHYSICIANS, P.C.,** <br><br> Plaintiff, <br><br> vs. <br><br> **MEDICAL SECURITY CARD COMPANY, LLC D/B/A SCRIPTSAVE AND WELLRX, and JOHN DOES, 1-10,** <br><br> Defendants. | 2:20-CV-10353-TGB <br><br><br> **ORDER DENYING MOTION TO DISMISS** |

Plaintiff[1] brings this class action against Defendant Medical Security Card Company ("MSCC") and other unknown individuals alleging a violation of 47 U.S.C. § 227, the Telephone Consumer Protection Act ("TCPA"). For the reasons that follow, the Motion to Dismiss is **DENIED.**

---

[1] The Clerk's office is directed to correct the case caption to properly reflect Plaintiff's name as listed here and in the Complaint, "Michigan Urgent Care & Primary Care Physicians, P.C.".

I.  BACKGROUND

Plaintiff is a professional corporation headquartered in Livonia, MI. ECF No. 1, PageID.2. Defendant MSCC is alleged to be a limited liability corporation that also does business as ScriptSave and WellRx. Plaintiff also names John Does 1-10 as potential unknown persons involved in the alleged TCPA violation. *Id.*

On October 3, 2019, Plaintiff alleges it received a fax advertisement to its facsimile machine from Defendant, promoting a medical savings plan intended to be offered to patients. Plaintiff alleges it had no prior relationship with Defendant and did not authorize the sending of this fax. *Id.* at PageID.4. The fax has a ScriptSave WellRX logo next to the header "Prescription Savings for 25 Years: Accepted nationwide at more than 65,000 pharmacies." Below that is a graphic showing the process for using the prescription savings card associated with the savings plan, as well as a picture of what the card looks like. Though the reproduction of the fax attached to the Complaint is difficult to read, the bottom appears to have more information about the benefits of using the prescription savings card. The last line says: "To request savings cards or fliers for your office, visit www.wellrx.com/pharmacies." *Id.* at PageID.13. Plaintiff provided the following scan of the fax at issue:



3-Oct-2019 16:34 UTC To: (17345426102) p.1

# ScriptSave® WellRx

## Prescription Savings for 25 Years
Accepted nationwide at more than 65,000 pharmacies

1. **CLIP OR SNAP** your savings card
2. **SHOW** at your pharmacy
3. **SAVE** up to 80%

**ScriptSave® WellRx**
RxBIN: 006053
RxPCN: MSC
ID #: FX090092019
Group #: 977

Pharmacy Help Desk 800-404-1031     Customer Care 800-407-8156

DISCOUNT ONLY – NOT INSURANCE
Administered by Medical Security Card

Do you have patients with no insurance, high co-pays, or high out-of-pocket costs? ScriptSave WellRx can help!

- Average savings of 60% – 80% on both brand name and generic prescriptions
- Accessible on website, iOS and Android apps
- Text, email, print or download a savings card
- Lowers the financial burden for patients without coverage or with high-deductible health plans
- Supports positive impact on patient satisfaction, safety, and loyalty
- Improves medication adherence

To request savings cards or fliers for your office, visit

www.wellrx.com/pharmacies

3

Plaintiff alleges that Defendant violated the TCPA by sending this fax. Rather than submit an Answer, Defendant MSCC filed a Motion to Dismiss. ECF No. 11. The motion has been fully briefed, and the Court indicated that it would resolve the motion without oral argument.

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Consideration of a Rule 12(b)(6) motion is confined to the pleadings. *Id.* In evaluating the motion, courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under *Ashcroft v. Iqbal*, the plaintiff must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

4

misconduct alleged." 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678–679).

### III. ANALYSIS

The TCPA prohibits any person from "using a telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227 (b)(1)(C). Plaintiff alleges a single violation of the TCPA through the sending of the aforementioned fax, and also indicates through its motion for class certification that there may be other parties who received similar faxes. Defendant MSCC makes two arguments in support of its Motion to Dismiss, and the Court will address each in turn.

### A. Whether the material transmitted is an advertisement

Defendant's first claim is that its fax is not an advertisement, but is merely informational, and therefore Plaintiff fails to state a claim of having been sent an "unsolicited advertisement" under the TCPA. *See, e.g.*, *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218 (6th Cir. 2015) (affirming that sending an unsolicited fax that is not an advertisement does not violate that TCPA). The Sixth Circuit in

5

*Sandusky* defined an advertisement under the TCPA as "any material that promotes the sale (typically to the public) of any property, goods, or services available to be bought or sold so some entity can profit." *Id.* at 222. There, the fax at issue came from Medco, a third-party pharmacy benefit manager who served as an intermediary between health plan sponsors (such as employers) and prescription drug companies. For any patients whose employers participated in Medco's program, their prescriptions would be cheaper if they came from a pre-approved list. Therefore, Medco would fax that list to participating patients' doctors so the doctors would know which prescriptions would ultimately be cheaper for patients to obtain. *Id.* at 220. The Court of Appeals found these faxes to be informational, rather than an advertisement, because "no record evidence show[ed] that the faxes promote the drugs or services in a commercial sense—they're not sent with hopes to make a profit, directly or indirectly, from Sandusky or the others similarly situated." *Id.* at 222. The Court found it of significance that the purpose of the fax was not to "attract clients or customers." *Id. See also Lyngaas v. J. Reckner Assocs., Inc.*, No. 2:17-CV-12867, 2018 WL 3634309, at *1 (E.D. Mich. July 31, 2018) (describing the Sixth Circuit's analysis in *Sandusky*).

Relying on *Sandusky*, Defendant contends that the fax it allegedly sent is not an advertisement because nothing is being bought and sold. Mtn. to Dismiss, ECF No.11, PageID.38, 42, 45. Indeed, the parties agree that the prescription savings card itself "is a free program that is not

6

bought or sold." Compl., ECF No. 1, Page ID.4; Mtn. to Dismiss, ECF No. 11, PageID.38. However, the Complaint and the fax both cite to Defendant's website, which states that MSCC "negotiates discounts on bulk drug purchases with pharmacy owners." Compl. ¶¶ 12-13, ECF No.1, PageID.3-4. When a patient uses the discount card to buy drugs at the pharmacy, "the pharmacy compensates the discount program." *Id.* While the Complaint does not fully describe Defendant's business model, at this stage we must take Plaintiff's allegations as true. The exact nature of what is being "bought and sold" and by whom is not clear at this stage, but Plaintiff has alleged sufficient facts to indicate that some money is changing hands and that the prescription savings cards being promoted have an impact on how much money that will be. More granular details are properly a question for discovery.

For purposes of making a plausible claim that may withstand a motion to dismiss, it is clear from the allegations in the Complaint that the program being promoted is not a welfare program, nor is it one being run by a charity, non-profit, or philanthropic entity. Defendant is alleged to be a for-profit limited liability corporation, and according to its website there is something being bought and sold here: access to negotiated rates on discount drugs, and access to more consumers and their overall purchasing power. *See generally How Do Prescription Discount Cards Work?*, ScriptSave WellRX, https://perma.cc/DFG5-HB6Y. The buying and selling is facilitated through patients' use of the discount card

7

program; by extension, it is also facilitated by a doctor's choice to provide a patient with information about these cards. This is the key difference between the fax in *Sandusky* and Defendant's fax: the promotion in *Sandusky* was not trying to "attract clients or customers," but here, it is. As this Court discussed in *Lyngaas*, a fax that "calls to the attention of the public" a service for which money will change hands can be a type of advertisement. 2018 WL 3634309, at *3. Defendant's fax is trying to cause doctors to recommend a service to their patients (even if that service comes at no cost to the doctors or the patients) which, if the patients use it, will financially benefit Defendant. This service, unlike in *Sandusky*, is not one that patients have already signed up for through their health insurance provider. MSCC's discount card program is something that patients would have to actively make the choice to use.

To be sure, this is an unusual form of advertisement. Generally, the customers who pay for a product are the same people as the users of the product, and so advertisements are directed toward them and promote the products "to be bought and sold." But not every business model is so straightforward. The Sixth Circuit acknowledged in *Sandusky* that sometimes advertising occurs "indirectly." 788 F.3d at 222. Other district courts have found faxes to be advertisements even when they promote something that another entity, not the recipient of the fax, will pay for. *See, e.g., Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 283 (S.D.N.Y. 2013) (holding that "the fact that the recipient of the fax is

8

not the one paying for the product does not make the proposed transaction non-commercial").

The Western District of Michigan has succinctly described how this type of business model can still lead to TCPA liability: "the relationship between the fax recipients and demand for Defendants' products, as opposed to a direct one-to-one link regarding a commercial transaction, is a sufficient basis on which a factfinder could infer the existence of an advertisement." *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 491 (W.D. Mich. 2014). The Third Circuit has described this as "third-party liability," where one of the ways of establishing liability under the TCPA is to show that a fax "was reasonably calculated to increase the profits of the sender." *Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129, 131-33 (3d Cir. 2019).

Regardless of the precise structure of Defendant's business model, it clearly depends on having as many patients as possible use its free prescription discount cards, and the purpose of the fax is to get doctors to encourage patients to do so. The fax is therefore sent in furtherance of Defendant's business activities in a way that is more than merely "informational"—it matters to Defendant's profits whether doctors take action based on what they read in the fax. As in *Stryker*, doctors receiving this fax can "stimulate demand" for Defendant's product by handing out the card to their patients. 65 F. Supp. 3d at 45. This contrasts with *Sandusky*, where the only person who loses out if the doctor ignores the

9

fax is the patient, presumably because the patient will have to pay more for their medications. Medco has already enrolled the patient's healthcare plan provider as a customer in its program, and nothing the doctor does will change that. Plaintiff has therefore alleged sufficient facts at the complaint stage to make out the "advertisement" element of its TCPA claim.

Another way of asserting a claim under the TCPA is to allege that a fax, while on its face informational and therefore permitted, is actually a "pretext" for advertisement. An example of a pretextual fax would be one that offers free goods and services as "part of an overall marketing campaign to sell property, goods, or services." *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 962 F.3d 882, 890 (6th Cir. 2020) (citing 71 Fed. Reg. at 25973). Defendant argues that Plaintiff's Complaint is insufficient because it does not make a claim of pretext. However, because Plaintiff has alleged sufficient facts to characterize the fax as an advertisement, there is no need for it to have pled in the alternative that the fax is pretextual.

### B. Whether the advertisement was received on a fax machine

Second, Defendants state that it is necessary for a fax to be received on an ink-and-paper machine to be actionable under the TCPA, and that Plaintiffs have insufficiently alleged the manner in which they received

the fax. ECF No. 11, PageID.48-49. Defendants rely on an FCC declaratory ruling issued in December 2019 which states as follows:

> [A]n online fax service that effectively receives faxes "sent as email over the Internet" and is not itself "equipment which has the capacity ... to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper" is not a "telephone facsimile machine" and thus falls outside the scope of the statutory prohibition.

*In the Matter of Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prot. Act of 2005*, No. 05-338, 2019 WL 6712128, at *1 (OHMSV Dec. 9, 2019). Defendants interpret this ruling to mean that "telephone facsimile machine" under the TCPA excludes any faxes received through an email or online platform, and that Plaintiff must make a specific showing that its "fascimile machine" uses ink and paper. Mtn. to Dismiss, ECF No. 13, PageID.48. Plaintiff counters that the FCC declaratory ruling was wrongly decided, is not a final order, is not binding on this court, is not retroactive, and that even if the court were to find otherwise, there are sufficient facts alleged at this stage that the fax was received on an ink-and-paper telephone facsimile machine as opposed to by email. ECF No. 13, PageID.120-28.

The text of the TCPA prohibits sending unsolicited advertisements "to a telephone facsimile machine." 47 U.S.C. § 227 (b)(1)(C). If Plaintiff has sufficiently alleged the fax was received on a telephone facsimile machine, as opposed to an email or online platform, it is unnecessary to

11

resolve the question of whether any further showing of "ink-and-paper" is necessary under the TCPA. At this stage, the Court must "construe the complaint in the light most favorable to the plaintiff . . . and draw all reasonable inferences in favor of the plaintiff" based on the facts alleged. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

The Complaint alleges that Plaintiff maintains a "telephone facsimile machine." Compl. ¶ 3, ECF No. 1, PageID.2. Plaintiff further alleges that it received the fax in question on its "facsimile machine." *Id.* at ¶ 10, PageID.3. Drawing a reasonable inference in favor of Plaintiff, the term "facsimile machine" clearly appears to mean the separate piece of equipment that receives faxes. To find that Plaintiff used the term "facsimile machine" to refer to a computer or to an email-based fax platform would be to engage in strained readings that are inappropriate for evaluating a motion to dismiss. Also, Defendant focuses its challenge exclusively on Paragraph Ten of the Complaint, making the case that because Plaintiff discussed receiving the fax on its "machine," while omitting the word "telephone," this could very well mean it was received on an email-based fax platform. ECF No. 11, PageID.48. But we must consider this reference in the context of the entire Complaint. Paragraph Three clearly refers to a "telephone facsimile machine." When Plaintiff alleges owning a "telephone facsimile machine," it is reasonable to read later references to a "facsimile machine" as referring to the same device, not an email-based platform.

12

Construed in the light most favorable to Plaintiff, the Complaint alleges the fax was received on a telephone facsimile machine. That is sufficient to make out a claim for a violation of the TCPA. Defendant's argument may live to fight another day if discovery discloses that the "telephone facsimile machine" referred to in the Complaint was actually an email or online fax platform, but for now the Court must take the allegations in the Complaint as true, without interpreting them beyond their plain meaning. Plaintiff does not need to allege more specific facts to show it received the fax on an ink-and-paper machine at this stage.

## CONCLUSION

Defendant's Motion to Dismiss is **DENIED.**

**SO ORDERED.**

DATED: November 30, 2020

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge