# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MICHIGAN URGENT &
PRIMARY CARE PHYSICIANS, P.C.,

|  |  |
|---|---|
| Plaintiff, | Case No. 2:20-cv-10353 |
| | Judge Terrence G. Berg |
| -vs- | Mag. Judge David R. Grand |

MEDICAL SECURITY CARD COMPANY,
LLC d/b/a SCRIPTSAVE and WELLRX
and JOHN DOES 1-10,

Defendants.

## JOINT MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

Adam G. Taub (P487103)
17200 W 10 Mile Rd Suite 200
Southfield, MI 48075
(248) 746-3790 – Phone
adamgtaub@clgplc.net

Daniel A. Edelman
Cathleen M. Combs
Dulijaza (Julie) Clark
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
P: (312) 739-4200 F: (312) 419-0379
dedelman@edcombs.com

i

## <u>TABLE OF CONTENTS</u>

Index of Authorities ...................................................................... ii

I.     FACTUAL AND PROCEDURAL BACKGROUND ..................................... 1

II.    APPLICABLE LAW SUPPORTING PRELIMINARY APPROVAL OF
       CLASS SETTLEMENT ......................................................................... 2

III.   CLASS SETTLMENT AND NOTICE ...................................................... 3

       Settlement Recovery ........................................................................ 4

       Class Notice ...................................................................................... 6

       Class Members' Right to Opt Out .................................................. 8

       Rule 23(a)(1)  --  Numerosity ......................................................... 8

       Rule 23(a)(2)  -- Commonality; and Rule 23(b)(3)- Common
       Questions of Law or Fact Predominate ........................................ 9

       Rule 23(a)(3)  --  Typicality ............................................................ 11

       Rule 23(a)(4)  --  Adequacy of Representation .............................. 12

       Rule 23(b)(3)  --  Class Action is Superior to Other Available Methods
       of Resolving This Controversey ...................................................... 13

IV.    RELIEF REQUESTED ......................................................................... 14

## <u>INDEX OF AUTHORITIES</u>

**Cases**

*Alexander Grant & Co. v. McAlister*,
  116 F.R.D. 583 (S.D. Ohio 1987) ........................................................ 9

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ............................................................... 9

*Brady v. LAC, Inc.*,
  72 F.R.D. 22 (S.D.N.Y. 1976) ........................................................... 13

*C.E. Design, Ltd. v. King Supply Co., LLC*, 09 C 2057,
  2012 WL 2976909 (N.D. Ill. July 20, 2012) ....................................... 6

*CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 07 C 5456,
  2009 U.S. Dist. LEXIS 67323 (N.D. Ill. July 27, 2009) ................................. 10

*City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 11-2658 (JBS/KMW)
  2014 WL 413533 (D.N.J. Feb. 3, 2014) ............................................. 7

*Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*,
  803 F.2d 878 (6th Cir. 1986) .............................................................. 2

*Critchfield Physical Therapy v. Taranto Group, Inc.*,
  293 Kan. 285, 263 P.3d 767 (2011) .................................................. 11

*Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*,
  375 F.2d 648 (4th Cir. 1967) .............................................................. 8

*De La Fuente v. Stokely Van Camp, Inc.*,
  713 F.2d 225 (7th Cir. 1983) ....................................................... 11-12

*Display South, Inc. v. Express Computer Supply, Inc.*,
  961 So.2d 451 (La. App. 1st Cir. 2007) .......................................... 11

*ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*,
  203 Airz. (App.) 94, 50 P.3d 844 (2002)........................................... 11

*Franklin v. City of Chicago*,
  102 F.R.D. 944 (N.D.Ill. 1984) ........................................................ 10

*Garrett v. Ragle Dental Lab, Inc.*, 10 C 1315,

2010 WL 4074379 (N.D. Ill. Oct. 12, 2010) ...................................................... 11

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   114 F.R.D. 48 (S.D.N.Y. 1987) ............................................................. 9

*Hinman v. M & M Rental Ctr.*, 06 C 1156,
   2008 U.S. Dist. LEXIS 27835 (N.D.Ill., April 7, 2008) .................................. 11

*Holtzman v. Turza*, 08 C 2014,
   2009 WL 3334909 (N.D. Ill., Oct. 14, 2009) .............................................. 10

*Holtzman v. Turza*,
   728 F.3d 682 (7th Cir. 2013).................................................................. 10

*In re Folding Carton Antitrust Litigation*,
   75 F.R.D. 727 (N.D. Ill. 1977) .............................................................. 13

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
   204 F.R.D. 330 (N.D. Ohio 2001) ........................................................... 3

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) ................................................................ 2

*Karen S. Little, LLC v. Drury Inns, Inc.*,
   306 S.W.3d 577 (Mo. App. 2010) ............................................................ 11

*Kavu, Inc. v. Omnipak Corporation*,
   246 F.R.D. 642 (W.D. Wash. 2007) .......................................................... 11

*Kulins v. Malco*,
   121 Ill. App. 3d 520, 459 N.E.2d 1038 (1st Dist. 1984) .................................. 8

*Lake v. First Nationwide Bank*,
   156 F.R.D. 615 (E.D. Pa. 1994) ............................................................. 14

*Lampkin v. GGH, Inc.*,
   146 P.3d 847 (Okla. Ct. App. Oct. 31, 2006) ............................................. 11

*McClendon v. Continental Group, Inc.*,
   113 F.R.D. 39 (D.N.J. 1986) ................................................................. 9

*Patrykus v. Gomilla*,
   121 F.R.D. 357 (N.D. Ill. 1988) ............................................................ 10

iii

*Riordan v. Smith Barney*,
    113 F.R.D. 60 (N.D. Ill. 1986) ............................................................. 8

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ............................................................. 12

*Sadowski  v. Med1 Online, LLC, 07 C 2973*,
    2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008) ............................ 10-11

*Sala v. National R. Pass. Corp.*,
    120 F.R.D. 494 (E.D. Pa. 1988) ............................................................. 8

*Scholes v. Stone, McGuire & Benjamin*,
    143 F.R.D. 181 (N.D. Ill. 1992) .......................................................... 8-9

*Swanson v. American Consumer Industries*,
    415 F.2d 1326 (7th Cir. 1969) ............................................................. 8

*Targin Sign Sys. v. Preferred Chiropractic Ctr., Ltd.*,
    679 F.Supp. 2d 894 (N.D. Ill 2010) ..................................................... 11

*Vandervort v. Balboa Capital Corp., SACV 11–1578–JLS*
    (JPRx), 2014 WL 1274049 (C.D. Cal. March 27, 2014) ................................... 7

## Statutes

47 U.S.C. §227 ................................................................... 1, 3, 10, 12

Fed. R. Civ. P. 23 ................................................................. 1, 8, 9, 14

Rule 23 ............................................................................. 3, 8, 9, 11, 12

47 U.S.C. §227(a)(5).................................................................6

47 U.S.C. § 227(b)(2).................................................................19

## Other

Manual for Complex Litigation (4th)§  21.632 ....................................... 3

Regulations

47 C.F.R. §64.1200(f)(1) .............................................................6

47 C.F.R. § 1.102(b) ................................................................17

Michigan Urgent & Primary Care Physicians, P.C., ("Plaintiff") individually and as representative of the settlement class and Defendant Medical Security Card Company, LLC d/b/a ScriptSave and WellRx ("MSCC" or "Defendant") jointly request pursuant to Fed. R. Civ. P. 23(b)(3) that the Court enter an order: (1) conditionally certifying the settlement class defined *infra*; (2) preliminarily approving a class action settlement as set forth in the Class Settlement Agreement attached hereto as <u>Appendix A</u>[1,2]; (3) directing notice to the conditionally certified class; and (4) setting dates for exclusions, objections, and a Fairness Hearing.

In support of their motion, the settling parties respectfully state as follows:

## I.   FACTUAL AND PROCEDURAL BACKGROUND

1.     In its Complaint, Plaintiff claimed that MSCC violated the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") by sending unsolicited facsimile advertisements to Plaintiff and other members of the nationwide class that did not contain an opt out notice in the form required by 47 U.S.C. § 227.

2.     Counsel for Plaintiff and Defendant have reviewed and analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and

---

[1] At the time of filing, the fully executed settlement agreement was not yet available. The fully executed settlement agreement will be filed as soon as it is made available.
[2] All capitalized terms not otherwise defined herein are defined in accordance with the definitions set forth in the Settlement Agreement.

the likelihood, costs and possible outcomes of one or more procedural and substantive appeals.

3.    Based upon this review and analysis, and following extensive negotiations over several months including a settlement conference with Magistrate Judge Grand, Plaintiff and the Defendant entered into the Settlement Agreement, attached hereto as <u>Appendix A</u> and summarized herein.

## II.    <u>APPLICABLE LAW SUPPORTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT</u>

4.    As explained by the Sixth Circuit, there is a strong "federal policy favoring settlement of class actions." <u>Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.</u>, 497 F.3d 615, 632 (6th Cir. 2007). Thus, a settlement agreement should be preliminarily approved provided it "is not the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." <u>Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO</u>, 803 F.2d 878, 880 (6th Cir. 1986) (quoting <u>Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco</u>, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted)).  It is axiomatic that the preliminary approval inquiry is not an onerous one and can often "be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal

presentations by parties." Manual for Complex Litigation (4th) § 21.632. *See also* <u>In re Inter-Op Hip Prosthesis Liab. Litig.</u>, 204 F.R.D. 330, 337 (N.D. Ohio 2001).

5.      Here, the parties desire to settle the action based upon the terms and conditions set forth in the Class Settlement Agreement (the "Agreement") executed by the parties, attached hereto as <u>Appendix A</u>, and request that this Court grant preliminary approval to the proposed class settlement, as set forth in further detail below.

### III.   <u>CLASS SETTLEMENT AND NOTICE</u>

6.      For settlement purposes, the parties have stipulated to the certification of a class ("the Class") defined as follows:

> all persons and entities who were subscribers to fax numbers that received faxes sent by or on behalf of Medical Security Card Company, LLC on or about October 3, 2019, promoting the commercial availability or quality of its goods or services for which it/they did not obtain prior consent and which did not contain an opt out notice as described in 47 U.S.C. § 227.

7.      The Class as defined meets all the requirements of Rule 23. Specifically:

(a)      Class members are ascertainable and so numerous that joinder of all members is impracticable; according to Defendant's business records, there are approximately 23,964 persons and/or entities who fall under the stipulated definition above.

(b)     There are questions of law or fact common to the Class, and there is a well-defined community of interest among Class members with respect to the subject matter of the lawsuit;

(c)     The claims of Plaintiff are typical of the claims of Class members;

(d)     Plaintiff has fairly and adequately protected the interests of the Class members;

(e)     A class action is superior to other available methods for an efficient adjudication of this controversy; and

(f)     The law firms of Edelman, Combs, Latturner & Goodwin, LLC and Adam G. Taub & Associates Consumer Law Group, PLC are qualified to serve as counsel for the Class.

8.     **Settlement Recovery**.     Subject to the terms of the Agreement, Defendant has agreed create a $2,350,000.00 Settlement Fund (hereinafter "the Settlement Fund") The Settlement Fund will be distributed as follows:

a.     Reasonable costs of notice and administration will be paid from the Settlement Fund up to a maximum of $42,000.00.

b.     Plaintiff's counsel's attorney's fees, which must be approved by the Court. Plaintiff's counsel shall submit a request for attorney's fees in an amount not to exceed $775,500.00 or 33% of the Net Settlement Fund.  The request will be

- 4 -

filed 28 days prior to the deadline for Class Members to submit objections.

       c.     Plaintiff Michigan Urgent & Primary Care Physicians, P.C., will apply for an award of $17,500.00 as an incentive award for services as a Class Representative.   Plaintiff's incentive award must be approved by the Court.   This amount shall be in addition to any amount plaintiff may recover as a Settlement Class Member.

       d.     If the deductions described in subparagraphs (a)-(c) are approved by the Court, the Net Settlement Fund (no less than $1,517,500.00) will be divided pro rata among Settlement Class Members who timely submit a valid claim form per each unique number ("Initial Distribution."). If there is sufficient money remaining in the Net Settlement Fund as a result  of checks left un-negotiated by the void date in the Initial Distribution to pay each Settlement Class Member who cashed his/her/its Initial Settlement Payment $10.00 each, after payment of the costs of notice and administration, incentive awards, and payments to the Settlement Class Members who submit valid claims, then such remaining Settlement Funds will be distributed on a *pro rata* basis to those Settlement Class Members ("Second Distribution")

       e.     All settlement checks shall be void 60 days from the date of issuance and shall so state on the check. Any unclaimed or undistributed amounts remaining in the Settlement Fund after all payments required under the Settlement

Agreement have been made, including the Initial Distribution and, if needed, a Second Distribution shall be distributed to a *cy pres* recipient, recommended by the parties and approved by the Court.

9.   **Class Notice**.       The Settlement Agreement provides for notice by facsimile and U.S. Mail.  Specifically, the Settlement Class Administrator shall cause the Notice and Claim Form in the form of Exhibit 1 to Appendix A be sent to the facsimile numbers identified on the Fax List provided by Defendants. The Settlement Class Administrator shall make at least two additional attempts to transmit the notice by facsimile to those numbers where the initial transmission failed.  In addition, the Claims Administrator shall also mail the Notice and Claim Form to the Settlement Class Members via first class mail to the address, if any, for the Settlement Class Member as contained in the Fax List.  Prior to mailing, the Settlement Class Administrator will check each address against the United States Post Office National Change of Address Database prior to the mailing.  The Claims Administrator shall take reasonable steps to attempt to forward any notices it mails to Settlement Class Members which are returned with a forwarding address.

Several courts have approved the sending of notice by facsimile in TCPA class action settlements.  *See e.g.*, C.E. Design, Ltd. v. King Supply Co., LLC, 09 C 2057, 2012 WL 2976909 (N.D. Ill. July 20, 2012); Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc., 12 C 780 (N.D. Ill.)(*Dkt. No. 73*)(fax and publication notice); Able

Home Health, LLC and Dr. G. Neil Garrett DDS, PC v. Globe Medical-Surgical Supply Co.*,* 12 C 5608 (N.D. Ill.) (*Dkt No. 90*)(fax notice); Dr. William P. Gress v. Northwood, Inc., 12 C 7278 (N.D. Ill.)(*Dkt. No. 38*)(fax and mail notice); Able Home Health, LLC v. Healthy Advice Commcn's, Inc., 12 C 3019 (N.D. Ill.)(*Dkt. No. 60*)(fax and mail notice); Richard Wade Architects, P.C. v. Eng'g Servs. and Prods. Co., 11 C 9251 (N.D. Ill.)(*Dkt. No. 58*)(fax notice); City Select Auto Sales, Inc. v. David Randall Assocs., Inc., 11-2658 (JBS/KMW), 2014 WL 413533 (D.N.J. Feb. 3, 2014).  Vandervort v. Balboa Capital Corp., SACV 11–1578–JLS (JPRx), 2014 WL 1274049 (C.D. Cal. March 27, 2014).

Settlement Class Counsel will also post the Notice (excluding the claim form), and the Settlement Agreement (excluding exhibits) on the firm's website. Settlement Class Counsel and/or the Settlement Class Administrator shall provide any Settlement Class Member who contacts either of them and requests a copy of the Notice and/or the Claim Form with the claim form.

The Settlement Class Administrator will also create a website that allows for electronic submission of claim forms, and the website will also post the notice, claim form, the Preliminary Approval Order, Plaintiff's Fee Petition and this Settlement Agreement (excluding exhibits).

10.    **Class Members' Right to Opt Out**. Any member of the Settlement Class may seek to be excluded from the Settlement Agreement and the releases

therein by opting out of the Settlement Class within the time period set by this Court. Any member who opts out of the Settlement Class shall not be bound by any prior Court order or the terms of the Settlement Agreement and shall not be entitled to any of the monetary benefits set forth in the Settlement Agreement. Class members will have at least 60 days after the Settlement Class Administrator sends Notice to opt out of the Settlement Agreement.

11.     The Court should give preliminary approval to the settlement because it is a fair and reasonable compromise of disputed claims wherein, as demonstrated below, each of the requirements for certification of the Settlement Class is met.

a.     **Rule 23(a)(1) -- Numerosity**. Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is about 10-40. Kulins v. Malco, 121 Ill. App. 3d 520, 530, 459 N.E.2d 1038 (1st Dist. 1984) (19 and 47 sufficient); Swanson v. American Consumer Industries, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); Cypress v. Newport News General & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); Riordan v. Smith Barney, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (10-29 sufficient); Sala v. National R. Pass. Corp., 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); Scholes v. Stone, McGuire & Benjamin,

143 F.R.D. 181, 184 (N.D. Ill. 1992) (72 class members).

In the present case, MSC has represented that, based on a review of its records, and other documents, the fax at issue was sent to approximately 23,964 unique recipients.  This plainly satisfies the numerosity requirement.

      b.    **Rule 23(a)(2)  -- Commonality; and Rule 23(b)(3)- Common Questions of Law or Fact Predominate**.    Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law <u>or</u> fact.  Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation.  <u>Blackie v. Barrack</u>, 524 F.2d 891, 910 (9th Cir. 1975). Common questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims. <u>McClendon v. Continental Group, Inc.</u>, 113 F.R.D. 39, 43-44 (D.N.J. 1986); <u>Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 114 F.R.D. 48, 52 (S.D.N.Y. 1987); <u>Spicer v. Chicago Board Options Exchange</u>, CCH Fed.Sec.L.Rptr. [1989-90 Transfer Binder] ¶94,943, at p. 95,254 (N.D. Ill. 1990); <u>Alexander Grant & Co. v. McAlister</u>, 116 F.R.D. 583, 590 (S.D. Ohio 1987).   Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality

requirement . . . is usually met." <u>Franklin v. City of Chicago</u>, 102 F.R.D. 944, 949 (N.D.Ill. 1984); <u>Patrykus v. Gomilla</u>, 121 F.R.D. 357, 361 (N.D. Ill. 1988).

Here, there are questions of law and fact common to the class that predominate over any questions affecting only individual class members.   The predominant common questions include:

(1)    Whether Defendant engaged in a pattern of sending unsolicited facsimile advertisements;

(1)    Whether Defendant sent, or caused to be sent, the facsimiles at issue;

(2)    Whether Defendant thereby violated the TCPA;

(4)    The manner in which Defendant compiled or obtained their list of facsimile numbers.

The Settlement Class is defined in terms of all persons and entities who were subscribers to fax numbers that received faxes sent by or on behalf of Medical Security Card Company, LLC on or about October 3, 2019, promoting the commercial availability or quality of its goods or services for which it/they did not obtain prior consent and which did not contain an opt out notice as described in 47 U.S.C. § 227.

Several courts have certified class actions under the TCPA.  <u>Holtzman v. Turza</u>, 08 C 2014, 2009 WL 3334909 (N.D. Ill., Oct. 14, 2009), aff'd in relevant part, 728 F.3d 682 (7th Cir. 2013);  <u>CE Design Ltd. v. Cy's Crabhouse North, Inc.</u>, 07 C 5456, 2009 U.S. Dist. LEXIS 67323 (N.D. Ill. July 27, 2009);  <u>Sadowski  v.</u>

Med1 Online, LLC, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); Hinman v. M & M Rental Ctr., 06 C 1156, 2008 U.S. Dist. LEXIS 27835 (N.D.Ill., April 7, 2008); Targin Sign Sys. v. Preferred Chiropractic Ctr., Ltd., 679 F.Supp. 2d 894 (N.D. Ill 2010); Garrett v. Ragle Dental Lab, Inc., 10 C 1315, 2010 WL 4074379 (N.D. Ill. Oct. 12, 2010); Lampkin v. GGH, Inc., 146 P.3d 847 (Okla. Ct. App. Oct. 31, 2006); Display South, Inc. v. Express Computer Supply, Inc., 961 So.2d 451, 455 (La. App. 1st Cir. 2007); Transportation Institute v. Promo Dart, Inc., No. 06-2-03460-1 (King Co. Sup. Ct. Wash., Nov. 14, 2006); Kavu, Inc. v. Omnipak Corporation, 246 F.R.D. 642 (W.D. Wash. 2007); ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 203 Airz. (App.) 94, 50 P.3d 844 (2002); Critchfield Physical Therapy v. Taranto Group, Inc., 293 Kan. 285, 263 P.3d 767 (2011); Karen S. Little, LLC v. Drury Inns, Inc., 306 S.W.3d 577 (Mo. App. 2010).

        c.    **Rule 23(a)(3) – Typicality**.   Rule 23 requires that the claims of the named Plaintiff be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members.  Thus, similarity of legal theory may control even in the face of differences of fact.

De La Fuente v. Stokely Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983)

(citation omitted).

In the instant case, typicality is inherent in the class definition.  By definition, each of the class members has been subjected to the same practice as the named Plaintiff, namely they are persons and entities with facsimile numbers that, during the Class Period, were sent faxes by or on behalf of Medical Security Card Company, LLC, promoting its goods or services for sale, for which it did not obtain the recipients' consent prior to sending and which do not contain an opt out notice as described in 47 U.S.C. § 227.

> d.      **Rule 23(a)(4) -- Adequacy of Representation**.  The adequacy of representation requirement involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992).

Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Counsel's qualifications are set forth in Appendix B. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

> e.      **Rule 23(b)(3)  -- Class Action Is Superior to Other Available Methods of Resolving This Controversy**.   A class action is the superior method

for the fair and efficient adjudication of this controversy.  The interest of class

members in individually controlling the prosecution of separate claims is small

because generally the class members are unaware of their rights and have damages

such that it is not feasible for them to bring individual actions.  "[O]ne of the

primary functions of the class suit is to provide a device for vindicating claims

which, taken individually, are too small to justify legal action but which are of

significant size if taken as a group."  Brady v. LAC, Inc., 72 F.R.D. 22, 28

(S.D.N.Y. 1976).

The special efficacy of the consumer class action has been noted by the

courts and is applicable to this case:

> **A class action permits a large group of claimants to have their
> claims adjudicated in a single lawsuit.  This is particularly
> important where, as here, a large number of small and medium
> sized claimants may be involved.  In light of the awesome costs of
> discovery and trial, many of them would not be able to secure
> relief if class certification were denied . . . .**

In re Folding Carton Antitrust Litigation, 75 F.R.D. 727, 732 (N.D. Ill. 1977)

(citations omitted).  Another court has noted:

> **Given the relatively small amount recoverable by each potential
> litigant, it is unlikely that, absent the class action mechanism, any
> one individual would pursue his claim, or even be able to retain
> an attorney willing to bring the action. As Professors Wright,
> Miller, and Kane have discussed in analyzing consumer
> protection class actions such as the instant one, 'typically the
> individual claims are for small amounts, which means that the
> injured parties would not be able to bear the significant litigation
> expenses involved in suing a large corporation on an individual**

- 13 -

**basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see, e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.**

Lake v. First Nationwide Bank, 156 F.R.D. 615, 625 (E.D. Pa. 1994).

12.     Counsel for Plaintiff and the proposed class believe that the settlement of this action on the terms and conditions set forth in the Settlement Agreement is fair, reasonable, and adequate, and would be in the best interest of the class members.

## IV.    RELIEF REQUESTED

WHEREFORE, the settling parties jointly request pursuant to Fed. R. Civ. P. 23(b)(3) that the Court enter an order: (1) conditionally certifying the settlement class defined *supra*; (2) preliminarily approving a class action settlement as set forth in the Class Settlement Agreement attached hereto as Appendix A; (3) directing notice to the conditionally certified class; and (4) setting dates for exclusions, objections, and a Fairness Hearing, at least 100 days after the filing of the Motion for Preliminary Approval

Respectfully submitted this 5th day of November, 2021.

- 14 -

<u>/s/Daniel A. Edelman</u>
Adam G. Taub (P487103)
17200 W 10 Mile Rd Suite 200
Southfield, MI 48075
(248) 746-3790 – Phone
adamgtaub@clgplc.net

Daniel A. Edelman
Cathleen M. Combs
Dulijaza (Julie) Clark
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
P: (312) 739-4200 F: (312) 419-0379
dedelman@edcombs.com

*Attorney for Plaintiff, Michigan Urgent*
*& Primary Care Physicians, P.C.*

<u>/s/ Jacob V. Bradley</u>_____
Jacob V. Bradley, #27750-49 (IN)
QUARLES & BRADY LLP
135 N. Pennsylvania Street, Suite 2400
Indianapolis, IN 46204
P: (317) 957-5000 | Fax: (317) 957-5010
Email: Jacob.bradley@quarles.com

Michael R. Turco
BROOKS WILKINS SHARKEY &
TURCO PLLC
401 South Old Woodard Ave., Suite 400
Birmingham, Michigan 48009
(248) 971-1713 | Fax: (248) 971-1801
Turco@bwst-law.com

*Attorneys for Defendant,*
*Medical Security Card Company, LLC*

- 15 -

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel A. Edelman, certify that on November 5, 2021, I had this document filed with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all counsel of record.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
courtecl@edcombs.com

# APPENDIX A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN URGENT &
PRIMARY CARE PHYSICIANS, P.C.,

                                Case No. 2:20-cv-10353

      Plaintiff,              Judge Terrence G. Berg

-vs-                        Magistrate Judge David R. Grand

MEDICAL SECURITY CARD COMPANY,
LLC d/b/a SCRIPTSAVE and WELLRX
and JOHN DOES 1-10,

      Defendants.

## SETTLEMENT AGREEMENT

## RECITALS AND DEFINITIONS

1. <u>Parties</u>. Defendant Medical Security Card Company, LLC d/b/a ScriptSave and WellRx ("MSCC" or "Defendant") and Plaintiff Michigan Urgent & Primary Care Physicians, P.C., ("Plaintiff") individually and as representative of the settlement class of persons defined below in paragraph 5 (the "Settlement Class"), enter into this Settlement Agreement ("Settlement Agreement"). Plaintiff and Defendant are collectively referred to as the Parties.

2. <u>Nature of Litigation</u>. In this lawsuit, captioned Michigan Urgent & Primary Care Physicians, P.C., v. Medical Security Card Company, LLC d/b/a ScriptSave and WellRx, and John Does 1-10,

1

United States District Court, Eastern District of Michigan, Southern Division, docket number No. 2:20-cv-10353, (the "Litigation"), Plaintiff alleges that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") by sending unsolicited advertisements via facsimile to plaintiff and a nationwide class of individuals and entities.

3.     <u>Denial of Liability</u>. Defendant denies violating the TCPA, and further denies any liability to Plaintiff and the Settlement Class for the claims alleged. Defendant desires to settle the claims solely to avoid the expense, burden, and uncertainty of further litigation, and to put to rest all claims, known or unknown, asserted or unasserted, actual or contingent, that have been or might have been asserted by the Plaintiff or the Settlement Class against it concerning the matters alleged in the complaint in the Litigation.

4.     "<u>Settlement Class Counsel</u>" means Edelman, Combs, Latturner & Goodwin, LLC and Adam G. Taub & Associates Consumer Law Group, PLC.

5.     "<u>Settlement Class</u>" means all persons and entities who were subscribers to fax numbers that received faxes sent by or on behalf of Medical Security Card Company, LLC on or about October 3, 2019, promoting the commercial availability or quality of its goods or services for which it/they did not obtain prior consent and which did not contain an opt out notice as described in 47 U.S.C. § 227.

6.     "<u>Plaintiff</u>" means Michigan Urgent & Primary Care Physicians, P.C., and its heirs, successors, or assigns, or any other person acting on its behalf or for its benefit, or any person claiming through it.

2

7.    "<u>Released Parties</u>" means, Defendant MSCC and its parents, subsidiaries, affiliates and sister or sibling companies as of the time of the actions that gave rise to the claims asserted in this Litigation, any of its predecessors and successors in interest, any of its insurers and any of its past, current and future owners, officers, directors, shareholders, partners, members, affiliates and agents (each solely in their respective capacity as such). The Parties expressly agree that all of these persons and entities that are not signatories to this Settlement Agreement are intended third-party beneficiaries of this Settlement Agreement.

8.    "<u>Settlement Class Administrator</u>" means the firm retained by Plaintiff with the consent of Defendant and approved by the Court to issue notice to the Settlement Class Members and to administer the settlement.

9.    "<u>Settlement Class Member(s)</u>" means Plaintiff and any member of the Settlement Class who does not opt out and is not otherwise excluded from the Settlement Class by the Court.

10.    "<u>Released Claims</u>" means any and all causes of action, suits, claims, or demands, in law or in equity, known or unknown, actual or contingent, asserted or unasserted, at this time or at the time the claims asserted in the Litigation arose, which Plaintiff or any other Settlement Class Members now have, did have, or may have in the future against the Released Parties, arising under any legal theory under the TCPA, whether or not alleged, and any similar legal theory related to or arising from the receipt of advertisements by facsimile. This includes, but is not

limited to, all claims that were asserted or could have been asserted against the Released Parties in the Litigation, including TCPA claims.

11.   <u>Plaintiff's Desire to Settle</u>.   Plaintiff, individually and on behalf of the Settlement Class (as defined below), desires to settle its claims against Defendant, having taken into account through Plaintiff's counsel the risks, delay, and difficulties involved in establishing a right to recovery in excess of that offered by this settlement and the likelihood that further litigation will be protracted and expensive. Plaintiff represents and warrants that it owned or leased the facsimile machine which received the faxes at issue in the Litigation at the time the faxes were received. The warranties and representations made in this Settlement Agreement survive the execution of this Settlement Agreement.

12.   <u>Investigation</u>.   Plaintiff's counsel states that they have investigated the facts and the applicable law. Based on the foregoing, and upon an analysis of the benefits afforded by this Settlement Agreement, Plaintiff's counsel considers it to be in the best interest of the Settlement Class to enter into this Settlement Agreement.

13.   <u>Agreement</u>.   In consideration of the foregoing and other valuable consideration, Plaintiff, Plaintiff's counsel and Defendant agree to settle the claims of the Plaintiff and the Settlement Class, the Released Claims, subject to the Court's approval, on the following terms and conditions.

## TERMS

1.      <u>Incorporation of Recitals and Definitions</u>.  The recitals and definitions set forth above are incorporated into this Settlement Agreement.

2.      <u>Effective Date</u>.  The Settlement Agreement shall become effective (hereinafter the "Effective Date") upon the occurrence of all of the following: (a) the Court's entry of a Final Approval Order substantially in the form of <u>Exhibit 3</u>, and (b) the expiration of five (5) business days after the date the Final Approval Order becomes final and non-appealable.

3.      <u>Certification of Settlement Class</u>.  Solely for the purposes of settlement, the parties stipulate to the certification of the Settlement Class. The Parties agree to propose that Plaintiff shall be appointed class representative and that Daniel A. Edelman and Julie Clark of Edelman, Combs, Latturner & Goodwin, LLC and Adam G. Taub of Adam G. Taub & Associates Consumer Law Group, PLC shall be appointed Settlement Class Counsel. The Settlement Class shall be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Defendant does not consent to certification of the Settlement Class for any purpose other than to effectuate this settlement of the Litigation. If this Settlement Agreement is not approved by the Court or is terminated pursuant to its terms or for any other reason, or is disapproved in a final order by any court of competent jurisdiction, (a) any order certifying the Settlement Class and all preliminary and/or final findings or stipulations regarding certification of the Settlement Class shall be automatically vacated upon

5

notice to the Court of this Settlement Agreement's termination or disapproval; (b) this Litigation will proceed as though the Settlement Class had never been certified and any related findings or stipulations had never been made and neither this Settlement Agreement, nor any of its Exhibits, nor any other associated settlement document may be used in seeking class certification; and (c) each party reserves all procedural or substantive rights as of the date of execution of this Settlement Agreement.

4.     <u>Identification of Settlement Class Members</u>.   Defendant represents that, based on a review of its records, and as has been shown in discovery, after conducting a thorough investigation of all available information and records, that approximately 23,964 facsimiles were sent by or on its behalf, which Plaintiff asserts are unsolicited facsimile advertisements as defined in the TCPA. Defendant or Settlement Class Counsel shall provide to the Settlement Class Administrator the list of the 23,964 recipients including the facsimile numbers, names and addresses, if available, associated with each unique fax number based upon its records (the "Fax List").

5.     <u>Relief to Plaintiff and the Settlement Class</u>.  The following relief shall be provided to Plaintiff and the Settlement Class, subject to the Court's approval:

      a.     Defendants shall create a $2,350,000.00 Settlement Fund ("Settlement Fund") which shall be distributed as set forth below. The entire Settlement Fund will be paid out and there will be no reverter to Defendants or its insurer(s);

b.   Notice and administration expenses will be paid from the Settlement Fund. The Settlement Fund less notice and administrative expenses is the Net Settlement Fund; and

c.   After the notice and administration expenses are deducted from the Settlement Fund, the Net Settlement Fund shall be apportioned as follows:

   i.   $17,500.00 shall be paid from the Settlement Fund to Plaintiff Michigan Urgent & Primary Care Physicians, P.C., as an incentive award in recognition of services as class representative, in addition to its recovery as a class member;

   ii.   Settlement Class Counsel shall request no more than 33% of the Net Settlement Fund, after deducting all costs and fees for notice to the Class, for attorney's fees and costs;

   iii.   Each member of the Settlement Class who submits a valid claim form will receive a check for a pro rata distribution of the Settlement Fund per unique fax number, after the amounts set forth in subsections (b), (c)(i) and (c)(ii) are distributed.

   iv.   If there is sufficient money remaining in the Net Settlement Fund to pay each Settlement Class Member who cashed his/her/its Initial Settlement Payment a minimum of $10 each, after the distributions identified in (b) and (c)(i)-(iii), then there shall be a Second Distribution to the Settlement Class Members.

   v.   If there is not sufficient money remaining in the Net Settlement Fund to make a Second Distribution as provided in section (c)(iv) above, such fund remaining in the Net Settlement fund shall be distributed to a cy pres charity, consistent with paragraph 10 below.

7

6.    Any award of attorneys' fees and costs and incentive award to Plaintiff which are approved by the Court may be distributed to them within fourteen (14) days following the Effective Date. Within thirty (30) days following the Effective Date, Settlement Class Counsel or the Settlement Class Administrator shall distribute the Net Settlement Fund to the Settlement Class Members who have submitted timely and valid claim forms in accordance with this Settlement Agreement. In the event that (i) the Settlement Agreement is terminated pursuant to its terms; (ii) Defendant withdraws from the Settlement Agreement; (iii) the Settlement Agreement does not become effective; or (iv) the Final Approval Order is reversed, vacated, or modified in any material respect which is not mutually acceptable to the Parties, then Settlement Class Counsel or the Settlement Class Administrator shall return within three (3) business days following the event all funds paid or otherwise received from the Settlement Fund, less any reasonable costs (which shall not exceed $42,000.00) to Defendants' Counsel, Quarles & Brady, LLP, Attention Jacob Bradley, 135 N. Pennsylvania Street, Suite 2400, Indianapolis, IN 46204, that were incurred by the Class Administrator to issue notice to the Settlement Class Members

7.    Settlement Class Members shall have sixty (60) days to submit a claim form, to opt out, or object to the proposed settlement, after notice is initially sent by fax.

8.    Costs associated with notice, claims administration and distribution of settlement checks shall be paid from the Settlement Fund and shall not exceed $42,000.00.

8

9.    The settlement checks issued to the members of the Settlement Class for payment of claims under this Settlement Agreement (both Initial Settlement Payment and Second Distribution, if any) will be void after 60 days from the date of issuance. Any Settlement Class Member who does not deposit or negotiate the claim payment check issued to such Settlement Class Member within 60 days of the date of issuance of the settlement claim payment check, agrees that such Settlement Class Member rescinds and withdraws his, her or its claim for monetary compensation under this Settlement Agreement but remains a member of the Settlement Class and is bound by the terms of this Settlement Agreement.

10.    Undistributed Settlement Funds.  Within thirty (30) days after the last void date of all settlement checks (both Initial Settlement Payment and the Second Distribution, if any) issued to Settlement Class Members, the Settlement Class Administrator will report to the Parties if there are any uncashed checks or unclaimed or undistributed amounts remaining in the Net Settlement Fund. Any such unclaimed or undistributed amounts remaining in the Settlement Fund after all payments required under this Settlement Agreement have been made shall be distributed to one or more cy pres charities selected by the parties, subject to approval by the Court.  The parties shall identify their respective proposed cy pres recipient at the time of the final approval of the settlement.  In no event shall undistributed settlement funds revert to Defendants or their insurers.  Any distribution to the court approved cy pres recipient(s) shall occur no earlier than forty-five (45) days after expiration of the void dates on all settlement checks (both Initial

Settlement Payment and the Second Distribution, if any) issued to Settlement Class Members.

11. <u>Release</u>. On the Effective Date, Plaintiff and the Settlement Class Members who have not opted out or been otherwise excluded from the Settlement Class shall be deemed to have fully and finally released and discharged the Released Parties from any and all liability for the Released Claims.

12. This Settlement Agreement may be pleaded as a full and complete defense by the Released Parties to any action, suit or other proceeding that may be instituted or prosecuted with respect to the Released Claims. Without admitting that California law or the laws of any other state apply to this Settlement Agreement or that the release provided by Plaintiff and the Settlement Class is a general release, the Parties agree that upon the Effective Date, the Settlement Class shall be deemed to have waived and shall have expressly waived the provisions and benefits of California Civil Code §1542, which provides that a general release does not extend to claims which the creditor does not know or suspect to exist in his, her or its favor at the time of executing the release, which if known by him, her or it, must have materially affected his, her or its settlement with the debtor. Further, Plaintiff and the Settlement Class, expressly waive any and all provisions and rights or benefits which may be conferred upon them by any state's law, statute, ordinance or regulation which is similar, comparable or equivalent to California Civil Code §1542.

13. If this Settlement Agreement is not approved by the Court or for any reason does not become effective, it shall be deemed null and void

and shall be without prejudice to the rights of the parties hereto and shall not be used in any subsequent proceedings in this or any other litigation, or in any manner whatsoever.

14.   <u>Attorneys' Fees, Notice Costs and Related Matters</u>.   The Settlement Class Administrator will administer the Net Settlement Fund for the benefit of the Settlement Class.   Defendant will advance from the Settlement Fund to the Settlement Class Administrator or Settlement Class Counsel, the reasonable costs of notice and settlement administration five (5) days after entry of the Preliminary Approval Order.   Settlement Class Counsel must seek approval from the Court to withdraw from the Settlement Fund any amount greater than $42,000.00 to cover costs related to issuing notice to the class and administration of the settlement. Settlement Class Counsel will request approval from the Court for attorneys' fees in an amount not to exceed 1/3 of the Net Settlement Fund as set forth in Section 5(c) of this Settlement Agreement. Settlement Class Counsel will not request additional fees or costs from Defendant or the Settlement Class other than the above-referenced sums. Settlement Class Counsel shall file a fee petition thirty (30) days prior to the deadline set by the Court in the Preliminary Approval Order to submit claims, opt out or object to the Settlement Agreement.

15.   <u>Notice</u>. Within 14 days of entry of the Preliminary Approval Order, Defendant shall provide the Settlement Class Administrator with the Fax List in MS Word or Excel format. Within 35 days of entry of the Preliminary Approval Order, the Settlement Class Administrator shall cause the Notice and Claim Form in the form of <u>Exhibit 1</u> to be sent to

the facsimile numbers identified on the Fax List. The Settlement Class Administrator shall make at least two additional attempts to transmit the notice by facsimile to those numbers where the initial transmission failed. After a total of three unsuccessful attempts to transmit the notice to a Settlement Class Member, the Claims Administrator shall mail the Notice and Claim Form to the Settlement Class Member via first class mail to the address, if any, for the Settlement Class Member contained in the Fax List. The Settlement Class Administrator will check each address to which a Notice and Claim Form are to be mailed against the United States Post Office National Change of Address Database prior to the mailing.  The Settlement Class Administrator shall take reasonable steps to attempt to forward any notices it mails to Settlement Class members which are returned with a forwarding address.

Settlement Class Counsel may also post the notice in the form of Exhibit 1 (excluding the claim form), and this Settlement Agreement (excluding exhibits) on their firm's website. Settlement Class Counsel or the Settlement Class Administrator shall provide any Settlement Class Member who contacts any of them and requests a copy of the Notices and/or the Claim Form (Exhibit 1) with materials requested.

The Settlement Class Administrator may create a website that allows for electronic submission of claim forms. Any website created by the Settlement Class Administrator may also post the notice, claim form, the Preliminary Approval Order, and this Settlement Agreement (excluding exhibits).  The Settlement Class Administrator shall set up a toll-free telephone number for receiving toll-free calls related to the Settlement.

12

Settlement Class Counsel and/or the Settlement Class Administrator shall retain all documents and records generated during the administration of the settlement including records of notice given to Settlement Class Members, returned mail, records of undelivered mail, claim forms, and payment to Settlement Class Members for a period of one year following the issuance of the Final Approval Order, and the expiration of all deadlines for appeal therefrom. Defendant may inspect such documents, upon reasonable request by its counsel.

The Settlement Class Administrator will be responsible for serving the required CAFA Notices to all appropriate officials within ten (10) days after the filing of the Preliminary Approval Motion.  In the event that the required CAFA Notices are not delivered within ten (10) days to all appropriate officials, the parties agree to postpone the remaining procedures set out in this Agreement until confirmation that (a) the required CAFA Notices have been delivered and (b) any delay in delivery has been excused and/or waived by all appropriate officials.

16.    <u>Claim Validation</u>. The Settlement Class Administrator shall match the fax number provided by the Settlement Class Member on a returned claim form to a fax number on the Fax List. The Settlement Claims Administrator shall also determine whether the claim is a duplicate, whether the claim form is signed and examine the claim form for completeness and validity. If the fax number does not match, then Settlement Class Counsel or the Settlement Class Administrator shall follow-up with the Settlement Class Member and inquire if such Settlement Class Member employed other fax numbers during the Class

Period (to ascertain if any different fax number is a number on the Fax List), in an effort to determine whether the claim is a valid claim.

If the fax number or fax numbers provided on a claim form do not match a fax number on the Fax List, and the follow-up with the Settlement Class Member has not resolved the issue, Settlement Class Counsel or the Settlement Class Administrator shall disallow the claim. If a claim is deemed disallowed by the Settlement Class Administrator, the Settlement Class Administrator must communicate that disallowance of the claim to the Settlement Class Member and Settlement Class Counsel and allow Settlement Class Counsel an opportunity to investigate the basis for disallowing the claim. In the event the Parties disagree as to the validity of any claim form or whether to disallow a claim, then Settlement Class Counsel will present the disputed claim to the Court for resolution.

17.   a.   <u>Initial Settlement Payment</u>. Settlement Class Members submitting valid claim forms shall be paid a pro rata share of the Net Settlement Fund in accordance with this Settlement Agreement for each unique facsimile number.

b.   <u>Second Distribution</u>.   If there is sufficient money remaining in the Net Settlement Fund to pay each Settlement Class Member who cashed his/her/its Initial Settlement Payment $10 each, after payment of the costs of notice and administration, incentive awards, and payments to the Settlement Class Members who submit valid claims, then such remaining Settlement Funds will be distributed on a pro rata basis to those Settlement Class Members ("Second Distribution").

c.    <u>W-9 Collection</u>. There is a possibility Settlement Class Members will recover more than $599.99, and such Settlement Class Members will be required to submit a W-9 form. The W-9 forms will be issued to Settlement Class Members by the Settlement Class Administrator as required within twenty-one (21) days after entry of the Final Approval Order and before any settlement checks are issued. Settlement Class Members will have thirty (30) days to respond to a request to complete a W-9 form. If a Settlement Class Member does not submit a W-9 form, the Settlement Class Administrator will deduct tax withholding from the settlement payment.  If W-9 forms need to be collected, certain dates set forth in paragraphs 6, 9, and 10 are reset and calculated as follows: within thirty (30) days following the expiration of time for Settlement Class Members to complete a W-9 form, Settlement Class Counsel or the Settlement Class Administrator shall distribute the Settlement Fund to the Settlement Class Members who have submitted valid claims in accordance with paragraph 16; settlement checks to the Settlement Class Members will be void sixty (60) days from date of issuance; and within thirty (30) days following the void date on the Settlement Class Members' checks, any uncashed checks or unclaimed or undistributed funds, the disposition of which will be determined by the Court, will be disbursed.

18.    <u>Right to Object</u>. Any Settlement Class Member may object to the Settlement Agreement and appear in person or through counsel, at his, her or its own expense. The deadline to object shall be set by the Court in the Preliminary Approval Order and the Parties shall propose that it be at least ninety (90) days after notice is sent.  Any Settlement

15

Class Member may object to the Settlement Agreement by filing with the Court and mailing a copy of the objection to Settlement Class Counsel and Defendant's Counsel. Any objection must include: (a) the name (or business name, if the objector is an entity), address, and cell phone number to which the call(s) was placed; (b) a statement of the objection to the Settlement Agreement; (c) an explanation of the legal and factual basis for the objection; and (d) documentation, if any, to support the objection.

19. <u>Right of Exclusion</u>. All Settlement Class members who properly file a timely written request for exclusion from the Settlement Class shall be excluded from the Settlement Class and shall have no rights as Settlement Class members pursuant to this Settlement Agreement. A request for exclusion must be in writing and state the name, address, and facsimile number (at which the fax(es) were received) of the person(s) or entity seeking exclusion. Each request must also contain a signed statement providing that: "I/we hereby request that I/we be excluded from the proposed Settlement Class in the Litigation." The request must be mailed to Settlement Class Counsel or the Settlement Class Administrator at the address provided in the notice and postmarked or received by Settlement Class Counsel or the Settlement Class Administrator on such date as set by the Court. A request for exclusion that does not include all of the foregoing information, or that is sent to an address other than the one designated in the notice, or that is not postmarked or received by Settlement Class Counsel or the Settlement Class Administrator within the time specified, shall be invalid and the person(s) serving such a request shall remain a

Settlement Class member and shall be bound by the terms of the Settlement Agreement, if approved. Settlement Class members shall have at least sixty (60) days from the date notice is sent to opt out of the Settlement.

20. <u>Preliminary Approval</u>. As soon as practicable after execution of this Settlement Agreement, Settlement Class Counsel shall file a Motion for Preliminary Approval of this Settlement Agreement and shall present such motion to the Court requesting the entry of a Preliminary Approval Order substantially in the form of <u>Exhibit 2</u> or in such other form which is mutually acceptable to the Parties.

21. <u>Final Approval</u>. Settlement Class Counsel shall file a memorandum in support of final approval of the settlement, which shall include Settlement Class Counsel's request for an award of attorneys' fees and costs, at least seven (7) days prior to the date the Court sets for the final approval hearing. The Parties shall request the Court to enter a Final Approval Order substantially in the form of <u>Exhibit 3</u>, or in another form which is mutually acceptable to the Parties. Pursuant to the Class Action Fairness Act, the Final Approval Order shall not be entered until the expiration of at least ninety (90) days from the date the Preliminary Approval Order was entered. Entry of a Final Approval Order substantially in the form of <u>Exhibit 3</u> or in another form which is mutually acceptable to the Parties is a condition precedent to this Settlement Agreement becoming fully effective. In the event a Final Approval Order substantially in the form of <u>Exhibit 3</u> or in another form which is mutually acceptable to the Parties is not entered then this Settlement Agreement shall be null and void and is rescinded and the

17

Preliminary Approval Order and any other orders entered by the Court in connection with the settlement of this Litigation shall be vacated and the Parties shall be returned to the position they were in prior to the execution of this Settlement Agreement and this Litigation shall proceed as though this Settlement Agreement was never executed.

22.    The fact that the Court may require non-material changes to documents attached as <u>Exhibits 1 through 3</u> does not invalidate this Settlement Agreement.

23.    <u>Release of Attorneys' Lien</u>.    In consideration of this Settlement Agreement, Settlement Class Counsel hereby waives, discharges and releases the "Released Parties," as defined in paragraph 7 of the Recitals and Definitions above, of and from any and all claims for attorneys' fees, by lien or otherwise, for legal services rendered by Settlement Class Counsel in connection with this Litigation, other than the amount awarded by the Court as specified above.

24.    <u>Delivery of Settlement Fund</u>. Defendant or persons acting on its behalf shall issue a check or wire the amount of the Settlement Fund less the amount advanced for notice and administration costs to the Client Trust Account of Settlement Class Counsel, thirty-five (35) days after entry of the Final Approval Order.   Once the payment is made in accordance with this paragraph, Defendant shall have no further payment obligation to Plaintiff or the Settlement Class, and Defendant shall have no obligation or duty to monitor, supervise or control disbursements from the Settlement Fund.   Settlement Class Counsel agrees to hold such funds in trust for the benefit of the Settlement Class and shall not disburse any funds from the Settlement Fund prior to the

Effective Date unless in accordance with this Settlement Agreement or as ordered by the Court.

25. <u>Dismissal Order</u>. Once the Settlement Fund has been paid and the checks have cleared, the parties will file a stipulation of dismissal and request entry of an order stating that the Parties will take the actions required to fulfill their obligations under the Settlement Agreement. In the event that Defendant or its insurers fail or refuse to make the payments, Defendant agrees, that at the option of Settlement Class Counsel, the Final Approval Order may be vacated pursuant to Fed. R. of Civ. Procedure 60(b), this Agreement shall be rescinded and this action shall be reinstated as if this Agreement never existed.

26. <u>Applicable Law</u>. This Settlement Agreement shall be governed by and interpreted in accordance with the state law of the State of Michigan.

27. <u>Miscellaneous Provisions</u>. The Parties and their attorneys agree to cooperate fully with one another in seeking approval of this Settlement Agreement, and to use their best efforts to effect the consummation of this Settlement Agreement and the settlement provided for herein. Whether or not this Settlement Agreement and the settlement contemplated hereunder are consummated, this Settlement Agreement and the proceedings had in connection herewith shall in no event be construed as, or be deemed to be, evidence of an admission or concession on the part of Defendants of any liability or wrongdoing whatsoever.

28. <u>Benefit of this Settlement Agreement</u>. This Settlement Agreement shall be binding upon and inure to the benefit of the Plaintiff,

the Released Parties and Settlement Class Members, and each of their respective successors and personal representatives, predecessors, affiliates, heirs, executors and assigns. It is expressly understood by the Parties that the individuals or entities of the Released Parties that are not signatories to this Settlement Agreement are intended third-party beneficiaries of this Settlement Agreement.

29.    <u>Authority</u>.  The Parties hereby represent to one another that they have full power and authority to enter into this Settlement Agreement and carry out their obligations hereunder.

30.    <u>Entire Agreement</u>.  Any and all prior understandings and agreements between the Parties with respect to the subject matter of this Settlement Agreement are merged into and with this Settlement Agreement, which fully and completely expresses the entire agreement and understanding of the Parties with respect to the subject matter hereof. This Settlement Agreement may be amended, modified or changed only by a written instrument or instruments executed by duly authorized officers or other representatives of the Parties expressly amending, modifying or changing this Settlement Agreement and may not be amended, modified or changed orally.

31.    <u>Counterparts</u>.  This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute the same instrument. Signatures provided by facsimile or e-mail shall be deemed legal and binding for all purposes.

32.    <u>Headings</u>.  The headings in this Settlement Agreement are for convenience of reference only and are not to be taken to be a part of the

provisions of this Settlement Agreement, nor to control or affect meanings, constructions or the effect of the same.

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be duly executed and delivered by their duly authorized representatives on the date last written below.

SIGNATURE PAGE TO FOLLOW

PLAINTIFF
Michigan Urgent & Primary
Care Physicians, P.C.

By: _____

Its: _____President._____

Dated: __11/04/2021__

DEFENDANT
Medical Security Card
Company, LLC d/b/a ScriptSave
and WellRx

By: _____

Its: _____

Dated: _____

SETTLEMENT CLASS
COUNSEL

DEFENDANT'S COUNSEL

_/s/ Dulijaza Clark_
Daniel A. Edelman
Dulijaza (Julie) Clark
EDELMAN, COMBS,
LATTURNER
& GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

Adam G. Taub
ADAM G. TAUB

Counsel for Plaintiff and the
Settlement Class

_____
Michael R. Turco (P48705)
BROOKS WILKINS SHARKEY &
TURCO PLLC
401 South Old Woodard Ave., Suite
400
Birmingham, Michigan 48009
(248) 971-1713 | Fax: (248) 971-
1801
Turco@bwst-law.com

Jacob V. Bradley, #27750-49 (IN)
QUARLES & BRADY LLP
135 N. Pennsylvania Street, Suite
2400
Indianapolis, IN 46204
P: (317) 957-5000 | Fax: (317) 957-
5010
Email: Jacob.bradley@quarles.com

Attorneys for Defendant, Medical
Security Card Company, LLC

22

# EXHIBIT 1

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN**
<u>**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT:**</u>

MICHIGAN URGENT & PRIMARY CARE PHYSICIANS, P.C., *v.* MEDICAL SECURITY CARD COMPANY, LLC
Case No. 2:20-cv-10353

**THIS IS A NOTICE OF A SETTLEMENT OF A CLASS ACTION LAWSUIT.**
**THIS IS <u>NOT</u> A NOTICE OF A LAWSUIT AGAINST YOU.**

**YOUR RIGHTS WILL BE AFFECTED BY THE SETTLEMENT OF THIS LAWSUIT. PLEASE READ THIS NOTICE CAREFULLY FOR INFORMATION ABOUT THE LAWSUIT, THE SETTLEMENT, AND YOUR LEGAL RIGHTS.**

**I.  THE LAWSUIT:** Michigan Urgent & Primary Care Services, P.C. ("Plaintiff") sued Medical Security Card Company, LLC ("MSCC") alleging that Plaintiff received an unsolicited fax advertisement promoting Defendant's goods or services that did not contain a proper opt out notice. Plaintiff alleged that these faxes violated the Telephone Consumer Protection Act ("TCPA"). MSCC denies these allegations and has raised certain defenses, but agreed to settle to avoid the expense, burden, and uncertainty of further litigation.

**II.     WHO IS INCLUDED**: MSCC's records show that you were sent one or more of its faxes and may be included in the Settlement. Specifically, the Court certified a "Settlement Class" of: All persons and entities in the United States who were subscribers to fax numbers that received faxes sent by or on behalf of Defendant Medical Security Card Company, LLC on or about October 3, 2019, promoting the commercial availability or quality of its goods or services for which it did not obtain prior consent and which did not contain an opt out notice as described in 47 U.S.C. § 227.

**III.     THE PROPOSED SETTLEMENT:** Defendant has agreed to fund a $2,350,000 Settlement Fund.  Before making payments to Settlement Class members, the Settlement Fund will be used to pay notice and administrative expenses not to exceed $42,000, an incentive award to the named Plaintiff (in an amount not to exceed $17,500) and attorneys' fees and costs (an amount not to exceed $775,000, which is 33% of the Net Settlement Fund). Settlement Class Counsel will file a Petition for Attorney's Fees by **[DATE, 2021]**.  Your share of the Settlement Fund depends on how many members of the Settlement Class submit valid claims. This notice is being sent to approximately 23,964 Settlement Class members. Participating Settlement Class members who submit a valid claim form will receive a *pro rata* distribution of the Net Settlement Fund per unique fax number.

**IV.     WHO REPRESENTS YOU**: The Court appointed Daniel A. Edelman and Julie Clark from Edelman, Combs, Latturner, & Goodwin, LLC and Adam G. Taub of Adam G. Taub & Associates Consumer Law Group, PLC to represent the Settlement Class as Class Counsel.

**V.     YOUR LEGAL RIGHTS AND OPTIONS**: (1) **Submit a Claim Form**. You must complete and submit the attached Claim Form by [DATE, 2022] to receive a payment. The value of each individual settlement payment cannot be determined until the Claims Deadline has passed and all claims have been verified. If your payment exceeds $599.99 you may be required to complete and submit a W-9. **(2) Exclude Yourself.** If you do not wish to participate in the Settlement you may exclude yourself from it by [DATE, 2021] by sending (via US Mail) a letter to Class Counsel at Edelman, Combs, Latturner & Goodwin, LLC, 20 S. Clark Street, Suite 1500, Chicago, IL 60603, fax: (312) 419-0379, or the Class Administrator, *Michigan Urgent & Primary Care Services, P.C. v. Medical Security Card Company, LLC,* Class Administrator, P.O. Box xxxx, City, ST xxxx-xxxx,. The Notice of Exclusion must state your name or your company's name, address, the fax number to which you were sent the fax, the case name and number, and a signed statement providing that: "I hereby request that I be excluded from the proposed Settlement Class in the Litigation." If you exclude yourself from the Settlement, you will not receive a payment and you will not release any claims against MSCC.  Your request for exclusion must be postmarked by **[DATE, 2022]** to be valid. **(3) Object.** If you do not exclude yourself, you can file an objection, either on your own or through an attorney, explaining why you think the Court should not approve the settlement. The objection must contain the case name and number; your name and address; the fax number to which you were sent the fax; a statement of your objection; an explanation of the legal and factual basis for the objection; and documentation, if any, to support your objection. The objection must be filed by **[DATE, 2022]** with (1) the Clerk of the United States District Court, Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, MI 48226; and sent to (2) Edelman, Combs, Latturner, & Goodwin, LLC (36792), 20 S. Clark St., Suite 1500, Chicago, IL 60603; and (3) Quarles & Brady LLP, 135 North Pennsylvania Street, Suite 2400, Indianapolis, IN 46204. **(4) Do Nothing.** If you do nothing you will not receive a monetary recovery, but you will be bound by all the terms of the Settlement Agreement.

**VI.     WHAT AM I GIVING UP UNDER THE SETTLEMENT?** If the settlement becomes final, you will be releasing MSCC and all the Released Parties as defined in the Settlement Agreement from any claims you may have relating in any way to

any unsolicited advertising faxes sent to you during the class period. The Released Claims are fully explained in the Settlement Agreement, available at www.edcombs.com and [class administrator's website].

**VII.    FINAL APPROVAL HEARING:** The Court has scheduled a Final Approval Hearing before Judge Terence G, Berg on **[DATE, TIME, 2022]** at the United States District Courthouse for the Eastern District of Michigan: Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, MI 48226. You or your attorney may attend this hearing if you desire and request to address the Court regarding any matters relating to this Settlement.

**VIII.    MORE INFORMATION:** More information is available at www.edcombs.com and [class administrator's website]. You may also inspect the pleadings and other papers that have been filed in this case at the office of the Clerk of the Court, U.S. District Court for the Eastern District of Michigan, 231 W. Lafayette Blvd., Detroit, MI 48226 or through PACER. If you have questions about this notice or the proposed settlement, you may contact Settlement Class Counsel.

**THE COURT AND THE DEFENDANT <u>CANNOT</u> PROVIDE INFORMATION.**

## <u>CLAIM FORM</u>
### *MICHIGAN URGENT & PRIMARY CARE PHYSICIANS, P.C., v.*
### *MEDICAL SECURITY CARD COMPANY, LLC, Case No.* 2:20-cv-10353 **(EDMI)**

**TO RECEIVE A PAYMENT UNDER THIS SETTLEMENT AGREEMENT, THIS CLAIM FORM MUST BE SUBMITTED ONLINE OR POSTMARKED ON OR BEFORE <u>DATE, 2022</u> TO THE FOLLOWING:**

**CLASS ADMINISTRATOR**
**ADDRESS**
**CITY, STATE ZIP CODE**

IF YOU DO NOT SUBMIT A COMPLETED CLAIM FORM BY THE DATE INDICATED YOU WILL NOT RECEIVE A PAYMENT UNDER THIS SETTLEMENT. THE VALUE OF EACH INDIVIDUAL SETTLEMENT PAYMENT CANNOT BE DETERMINED UNTIL THE CLAIMS DEADLINE HAS PASSED AND WILL BE BASED ON, AMONG OTHER THINGS, THE TOTAL NUMBER OF CLAIMS RECEIVED.

**INSTRUCTIONS**:  You must provide all required information below and sign the claim form and submit online or mail the claim form.  You may be required to submit a W-9 form if the value of your claim exceeds $599.99.  If you are required to submit a W-9 form and do not do so, your recovery will be limited to $599.99.

Please print or type the following information:

NAME OF PERSON OR ENTITY THAT SUBSCRIBED TO THE FAX LINE (a subscriber is the person or entity that maintained the account with the telecommunications company):

**Company Name**

| | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Contact Name**

| Last | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| First | | | | | | | | | | | | | | | | | | | | | | | |

**Address:**

| Line 1: | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Line 2: | | | | | | | | | | | | | | | | | | | | | | | |
| City/St/Zip | | | | | | | | | | | | | | | | | | | | | | | |

**Day Time Phone (area code-number):**

| Telephone | | | | - | | | | - | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Fax Number** at which you received a fax from Defendants (area code-number):

| Fax | | | | - | | | | - | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

Verification:
I submit that the foregoing information is true and correct to the best of my knowledge, information and belief.

_____   Date: _____
    Signature


_____
Print name and title

**IT IS YOUR RESPONSIBILITY TO KEEP A CURRENT ADDRESS
ON FILE WITH THE CLASS ADMINISTRATOR.**

**EXHIBIT 2**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MICHIGAN URGENT &
PRIMARY CARE PHYSICIANS, P.C.,

                                          Case No. 2:20-cv-10353

        Plaintiff,                        Judge Terrence G. Berg

-vs-                                      Magistrate Judge David R. Grand

MEDICAL SECURITY CARD COMPANY,
LLC d/b/a SCRIPTSAVE and WELLRX
and JOHN DOES 1-10,

        Defendants.

### [*PROPOSED*] PRELIMINARY APPROVAL ORDER

This matter is before the Court on Plaintiff's Unopposed Motion for Preliminary Approval of the Class Settlement Agreement in the above-captioned matter ("Lawsuit"). The Parties have submitted a Settlement Agreement ("Agreement") that the Court has reviewed, and the Court finds that it is just and proper that the Agreement be preliminarily approved.

It is hereby **ORDERED**, **ADJUDGED**, and **DECREED** as follows:

1.     The Court has jurisdiction over the subject matter of the Lawsuit and over all settling parties.

2.     Class Members:  For settlement purposes only, and in accordance with Fed. R. Civ. P. 23(b)(3), the Lawsuit is hereby preliminarily and conditionally

certified as a class action on behalf of the following class of consumers (hereinafter referred to as the "Class Members"):

> All persons and entities who were subscribers to fax numbers that received faxes sent by or on behalf of Medical Security Card Company, LLC on or about October 3, 2019, promoting the commercial availability or quality of its goods or services for which it/they did not obtain prior consent and which did not contain an opt out notice as described in 47 U.S.C. § 227.

3.     Class Representatives and Class Counsel:  For settlement purposes only, and in accordance with Fed. R. Civ. P. 23, the Court preliminarily certifies the named Plaintiff, Michigan Urgent & Primary Care Physicians, P.C., as the Class Representative. The Court also preliminarily certifies counsel for Plaintiffs, Edelman, Combs, Latturner & Goodwin, LLC and Adam G. Taub & Associates Consumer Law Group, PLC, as Class Counsel. This Court preliminarily finds that Class Counsel have, and will continue to, fairly and adequately represent the interests of the Class Members. Plaintiffs and Class Counsel, on behalf of the Class Members, are authorized to take all appropriate action required or permitted to be taken by the Agreement to effectuate its terms.

4.     Preliminary Class Certification:  For settlement purposes only, the Court preliminarily finds that the Lawsuit satisfies the applicable prerequisites for class action treatment under Fed. R. Civ. P. 23 for the proposed Settlement Class, namely:

- The Class Members are so numerous that joinder of all of them in the Lawsuit is reasonably impracticable;

- There are questions of law and fact common to the Class Members, which predominate over any individual questions;

- The claims of the named Plaintiff are typical of the Class Members;

- Plaintiff and Class Counsel have fairly and adequately represented and protected the interests of all of the Class Members; and

- Class treatment of these claims will be efficient and manageable, thereby achieving an appreciable measure of judicial economy, and a class action is superior to the other available methods for a fair and efficient adjudication of this controversy.

5.     For settlement purposes only, the Court preliminarily finds that settlement of the Lawsuit, on the terms and conditions set forth in the Agreement preliminarily appears in all respects fair, reasonable, adequate and in the best interest of the Class Members and within the range of possible approval, especially in light of the complexity, expense, and probable duration of further litigation, the risk and delay inherent in possible appeals, the risk of collecting any judgment obtained on behalf of the Class Members, and the limited amount of any potential total recovery for the class. This finding is subject to further consideration at the Final Fairness Hearing.

6.     The Third Party Class Action Administrator: The Court appoints Class-Settlement.com as Class Administrator to assist in the administration of the

Class Settlement and provide notification to Class Members. The costs and expenses for the Class Administrator shall be paid subject to the terms of the Agreement.

7.      The Class Administrator will be responsible for mailing the approved class action notice to the Class Members as outlined in the Agreement.

8.      Notice Plan:  The Court approves the Parties' Notice Plan as set forth in the Agreement including the form and substance of the class notice attached thereto as Exhibit A (the "Class Notice"). This Court finds the Parties' proposed Notice Plan as set forth in the Agreement, including the Class Notice, fully satisfies the requirements of due process, the Federal Rules of Civil Procedure and any other applicable laws, and constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto. Accordingly, this Court approves the form and content of the Notice Plan and Class Notice.

9.      The Class Administrator shall file proof of compliance with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), no later than [DATE], i.e. no less than 14 days before the Final Fairness Hearing.

10.     The Final Fairness Hearing shall take place before the Honorable Terrence G. Berg on _____, 2022, at the United States District Court for the Eastern District of Michigan (Detroit), to determine: whether the proposed

Settlement of the Lawsuit on the terms and conditions provided for in the Agreement is fair, reasonable, and adequate as to the Class Members and should be approved; whether Judgment, as provided for in the Stipulation, should be entered; payments to Settlement Class Members, the amount of any fees and costs that may be awarded to Class Counsel, and the amount of any service award that may be awarded to Plaintiffs, as provided for in the Stipulation. The Court will also hear and consider any properly lodged objections at that time under the process set forth below.

11.   Subject to final approval after the Final Fairness Hearing, all Class Members who do not request exclusion ("opt-out") from the Settlement Class certified pursuant to Federal Rule of Civil Procedure 23(b)(3) shall be bound by all determinations and judgments in this Lawsuit concerning the Settlement, including, but not limited to, the validity, binding nature and effectiveness of the releases set forth in the Agreement. To be valid, a request for opt-out must be in writing and personally signed by the Class Member who seeks to be excluded and sent to the Class Administrator, and it must include: (1) the name and address of the Class Member and (2) a statement to the effect that the Class Member wishes to be excluded from the Class. Opt-out requests must be postmarked to the Class Administrator no later than _____, 2022.

12.     Any Class Member who has not previously opted-out in accordance with the terms of Paragraph 11 above may appear at the Final Fairness Hearing to argue that the proposed Settlement should not be approved. Copies of all written objection papers must be served on Class Counsel and Defendant's Counsel via U.S. mail and/or facsimile, with any following addresses:

| Class Counsel: | Attorney for Defendant: |
|---|---|
| Daniel A. Edelman | Michael R. Turco |
| JULIE CLARK | BROOKS WILKINS SHARKEY & |
| EDELMAN, COMBS, LATTURNER & | TURCO PLLC |
| GOODWIN, LLC | 401 South Old Woodard Ave., Suite 400 |
| 20 South Clark St., Ste 1500 | Birmingham, Michigan 48009 |
| Chicago, IL 60603 | P:(248) 971-1713; F(248) 971-1801 |
| P:(312)739-4200; F:(312)419-0379 | Turco@bwst-law.com |
| | |
| Adam G. Taub | Jacob V. Bradley |
| Adam G. Taub & Associates | Quarles & Brady LLP |
| Consumer Law Group, PLC | 135 N. Pennsylvania St., Suite 2400 |
| 17200 W 10 Mile Rd Suite 200 | Indianapolis, IN 46204 |
| Southfield, MI 48075 | P:(317)957-5000; F:(317)957-5010 |
| Phone: (248) 746-3790 | Jacob.bradley@quarles.com |
| Email: adamgtaub@clgplc.net | |

To the extent necessary or desired, the Settling Parties may respond to any properly filed objections no later than fourteen (14) days before the Final Fairness Hearing.

13.     All proceedings in this Lawsuit are stayed pending final approval of the Settlement, except as may be necessary to implement the Settlement or comply with the terms of the Stipulation.

14.     If the Agreement is terminated or is not consummated for any reason whatsoever, the preliminary certification of the Settlement Class shall be void, and Plaintiffs and Defendant shall be deemed to have reserved all their respective rights to propose or oppose any and all class certification issues.

15.     This Court reserves the right to adjourn or continue the date of the Final Fairness Hearing without further notice to the Settlement Class, and retains jurisdiction to consider all further applications arising out of or connected with the Settlement. This Court may approve or modify the Settlement without further notice to the Settlement Class.

**IT IS SO ORDERED:**


_____
HONORABLE TERRENCE G. BERG
United States District Judge

Dated:

**EXHIBIT 3**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN URGENT &
PRIMARY CARE PHYSICIANS, P.C.,

|  |  |
|---|---|
| Plaintiff, | Case No. 2:20-cv-10353 |
|  | Judge Terrence G. Berg |
| -vs- | Magistrate Judge David R. Grand |

MEDICAL SECURITY CARD COMPANY,
LLC d/b/a SCRIPTSAVE and WELLRX
and JOHN DOES 1-10,

Defendants.

### [PROPOSED] FINAL APPROVAL ORDER

On [DATE, 2021], this Court entered an order granting preliminary approval (the "Preliminary Approval Order") of the settlement between Plaintiff Michigan Urgent & Primary Care Physicians, P.C., ("Plaintiff"), on its own behalf and on behalf of the Settlement Class (as defined below), and Defendant Medical Security Card Company, LLC d/b/a ScriptSave and WellRx ("MSCC" or "Defendant") as memorialized in the Settlement Agreement (the "Settlement Agreement").

On [DATE, 2022], the Court held a fairness hearing (the "Final Approval Hearing"), for which members of the Settlement Class had been given appropriate notice and were invited to appear, including those with any objections. An opportunity to be heard was given to all persons

requesting to be heard in accordance with the Preliminary Approval Order. Having considered the Parties' Settlement Agreement, Plaintiff's Memorandum in Support of Final Approval of the Class Action Settlement and all other evidence submitted, and good cause having been shown,

IT IS HEREBY ORDERED THAT:

1. This Court has jurisdiction over Plaintiffs, Defendants, members of the Settlement Class, and the claims asserted in the Litigation.

2. The Settlement Agreement was entered into in good faith following arm's length negotiations and is non-collusive.

3. This Court grants final approval of the Settlement Agreement, including, but not limited to, the releases therein, and finds that the settlement is in all respects fair, reasonable, and adequate, and in the best interests of all those affected by it. The Parties and their counsel shall implement and consummate the Settlement Agreement according to its terms and provisions. The Settlement Agreement is binding on, and has res judicata and preclusive effect in all pending and future lawsuits or other proceedings brought or maintain by or on behalf of Plaintiff and all other Settlement Class Members who have not opted out of the Settlement. Any pending actions addressing the same conduct and harm that is the subject of this Settlement Agreement shall be terminated based on the entry of this Final Judgment and Order. Any timely objections that were filed have been considered and are overruled. Accordingly, all members of the Settlement Class who have not opted out are bound by this Order finally approving the Settlement.

## Class Certification

4.      On [DATE, 2021], pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court entered an order entitled, "Order Preliminarily Approving Class Action Settlement and Class Notice" (the "Preliminary Approval Order").

5.      The following Settlement Class is now finally certified for purposes of settlement pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3):

> All persons and entities who were subscribers to fax numbers that received faxes sent by or on behalf of Medical Security Card Company, LLC on or about October 3, 2019, promoting the commercial availability or quality of its goods or services for which it/they did not obtain prior consent and which did not contain an opt out notice as described in 47 U.S.C. § 227.

6.      The Court finds that certification solely for purposes of settlement is appropriate in that: (a) the class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the class that predominate over any questions affecting only individual class members; (c) Plaintiff's claims are typical of the claims of the class; (d) Plaintiff will fairly and adequately protect the interests of the class; (e) Edelman, Combs, Latturner & Goodwin, LLC and Adam G. Taub & Associates Consumer Law Group, PLC. are adequate class

counsel; and (f) a class action is the superior method for the fair and efficient adjudication of this controversy.

6.     Michigan Urgent & Primary Care Physicians, P.C.,. is designated as representatives of the Settlement Class.

7.     Dulijaza (Julie) Clark and Daniel A. Edelman of Edelman, Combs, Latturner and Goodwin, LLC are appointed as Class Counsel.

<u>Class Notice</u>

8.     The Class Notice (as described in the Settlement Agreement) fully complies with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled to notice of the settlement of the Action.  The Court has approved the forms of notice to the Settlement Class.

9.     With respect to the Settlement Class, this Court finds that certification is appropriate under Federal Rule of Civil Procedure 23(a) and (b)(3).  Notice was given by facsimile or first-class U.S. Mail to each Settlement Class Member whose identity could be identified through reasonable effort.  Settlement Class Counsel also posted the Settlement Agreement (without exhibits) and Notice on its firm website, www.edcombs.com.  The Class Notice and Settlement Agreement were also posted on [www.INSERTSETTLEMENT.com].

10.     A total of _____ <u>valid claims</u> have been submitted, inclusive of (a) ____ ____ [<u>XX</u>] submissions which initially contained deficiencies that were ultimately cured making them valid claims subsequent to

follow up; [XX] late but otherwise valid claim which the parties request and Court agrees be deemed valid.

11.     Plaintiff submitted the affidavit of [------------------------ of ------------------------] to demonstrate that the "Notice of Class Action and Proposed Settlement" (the "Notice") was sent to the members of the Settlement Class as ordered in the Preliminary Approval Order. The Court finds that the Notice and the process by which it was sent: (1) fully complied with the requirements of Rule 23(c)(2)(B) and due process; (2) constituted the best notice practicable under the circumstances; (3) constituted notice that was reasonably calculated, under the circumstances, to apprise the members of the Settlement Class of the pendency of this Action, their right to object to or exclude themselves from the proposed Agreement and to appear at the Final Approval Hearing; and (4) constituted due and sufficient notice to all persons entitled to notice of the settlement of this lawsuit.

## Objections and Opt-Outs

12.     No member of the Settlement Class has filed an objection to the settlement.  The Court has considered each of these objections carefully and has overruled them.  None of these objections raised a valid concern about the Settlement Agreement.

13.     Requests for exclusion have been submitted on behalf of the following entity / fax numbers which is hereby excluded from the Class and this case:

[LIST BY NAME OR
ATTACH AS EXHIBIT]

<u>Class Compensation</u>

14.     In accordance with the terms of the Settlement Agreement, Defendants shall provide a total of two million three hundred fifty thousand dollars (\$2,350,000.00) to create a Settlement Fund, less any costs advanced for notice and administrative expenses pursuant to the Settlement Agreement.  No portion of the Settlement Fund shall revert back to Defendant.

15.     As set forth in the Settlement Agreement, each member of the class who has submitted a timely and otherwise valid claim will be entitled to a pro rata share of amounts remaining in the Settlement Fund subsequent to deductions for costs of notice and administration expenses; attorneys' fees; and class representative award to Michigan Urgent & Primary Care Physicians, P.C.. The Settlement Administrator will cause delivery of payments to class members.  As agreed between the parties, checks issued to the class members will be void sixty (60) days after issuance.  Any money remaining from checks issued to claiming class members but not cashed shall be awarded to [parties to agree].

<u>Releases</u>

16.     All claims or causes of action of any kind by Plaintiff and Settlement Class Members who have not timely opted out or otherwise excluded themselves from the Settlement Class are forever barred and released pursuant to the terms of the releases set forth in Paragraph 11 of the Settlement Agreement.

17.     This lawsuit is dismissed with prejudice as to Plaintiff and all members of the Settlement Class (except that the dismissal shall be without prejudice as to those persons identified above who submitted

valid exclusions), and without fees or costs except as provided for in the Settlement Agreement.

<u>Award of Attorneys' Fees, Costs, and Incentive Award</u>

18.   The Court has considered Class Counsel's application for attorneys' fees. The Court awards Class Counsel the sum of $<u>          </u>.00 as an award of attorneys' fees to be paid from the Settlement Fund, and finds this amount of fees is fair and reasonable.

19.   The Court grants Class Counsel's request for an incentive award to the class representatives and awards $<u>          </u>.00 to Michigan Urgent & Primary Care Physicians, P.C. The Court finds that this payment is justified by the Class Representative's service to the Settlement Class.  This payment shall be made from the Settlement Fund.

<u>Other Provisions</u>

20.   The Court adopts and incorporates all of the terms of the Settlement Agreement by reference here.

21.   The Parties to the Settlement Agreement shall carry out their respective obligations thereunder.

22.   This Court retains continuing jurisdiction over this action, Plaintiff, all members of the Settlement Class, and Defendant to determine all matters relating in any way to this Final Approval Order and Judgment, the Preliminary Approval Order, or the Settlement Agreement, including, but not limited to, their administration, implementation, interpretation, or enforcement.

23.   Neither the Settlement Agreement, the Preliminary Approval Order, this Order Finally Approving the Settlement, nor any of their

provisions, nor any of the documents (including but not limited to drafts of the Settlement Agreement, the Preliminary Approval Order, Order Finally Approving the Settlement), negotiations, or proceedings relating in any way to the settlement, shall be construed as or deemed to be evidence of an admission or concession of any kind by any person, including Defendants, and shall not be offered or received in evidence in this or any other action or proceeding except in an action brought to enforce the terms of the Settlement Agreement or except as may be required by law or court order.

24.     Without further approval from the Court, the Parties may agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement and its implementing documents as (1) shall be consistent in all material respects with this Final Approval Order and Judgment, or (2) do not limit the rights of Settlement Class Members

25.     The Settlement Class Administrator shall distribute the Net Settlement Fund to the Settlement Class Members in accordance with the provisions of this Order and the parties' Settlement Agreement, within thirty (30) days following the Effective Date as more fully set forth in the Settlement Agreement.

26.     Within thirty (30) days of the last date by which all distributions are made to the Settlement Class Members, inclusive of any second distribution payment to Class Members provided for in Settlement Agreement, if needed, Class Counsel shall file a notice with the Court affirming that the Settlement Fund was paid out as contemplated by the Settlement Agreement.

27.   Any amounts remaining in the Settlement Fund after all distributions are made, inclusive of any second distribution payment to Class Members provided for in Settlement Agreement, if needed, are to be paid as a cy pres award to the [_____ ].

28.   The Court finds that there is no just reason to delay the enforcement of or appeal from this Final Approval Order and Judgment.


IT IS SO ORDERED:


_____
HONORABLE TERRENCE G. BERG
United States District Judge

Dated:

# APPENDIX B

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHIGAN URGENT &
PRIMARY CARE PHYSICIANS, P.C.,

             Plaintiff,

-vs-

MEDICAL SECURITY CARD COMPANY,
LLC d/b/a SCRIPTSAVE and WELLRX
and JOHN DOES 1-10,

             Defendants.

Case No. 2:20-cv-10353
Judge Terrence G. Berg
Mag. Judge David R. Grand

**DECLARATION OF DANIEL A. EDELMAN**

Daniel A. Edelman declares under penalty of perjury, as provided for by 28 U.S.C. §1746, that the following statements are true:

1. Edelman, Combs, Latturner & Goodwin, LLC, has 6 principals, Daniel A. Edelman, Cathleen M. Combs, Tara L. Goodwin, Julie Clark, Heather Kolbus, and Cassandra P. Miller, and four associates. Member James O. Latturner retired in 2020.

2. **Daniel A. Edelman** is a 1976 graduate of the University of Chicago Law School. From 1976 to 1981 he was an associate at the Chicago office of Kirkland & Ellis with heavy involvement in the defense of consumer class action litigation (such as the General Motors Engine Interchange cases). In 1981 he became an associate at Reuben & Proctor, a medium-sized firm formed by some former Kirkland & Ellis lawyers, and was made a partner there in 1982. From the end of 1985 he has been in private practice in downtown Chicago. Virtually all of his practice involves litigation on behalf of consumers, through both class and individual actions. He is the author of the chapters on the "Fair Debt Collection Practices Act," "Truth in Lending Act," and "Telephone Consumer Protection Act" in *Illinois Causes of Action* (Ill. Inst. For Cont. Legal Educ. 2020 and earlier editions), author of the chapter on the Telephone Consumer Protection Act in *Federal Deception Law* (National Consumer Law Center 2013 Supp.), author of *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2008, 2011, 2014, 2019), and *Collection Litigation: Representing the Debtor* (Ill. Inst. Cont. Legal Educ. 2014); author of Chapter 5, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2020 and earlier editions), co-author of Rosmarin & Edelman, *Consumer Class Action Manual* (2d-4th editions, National Consumer Law Center 1990, 1995 and 1999); author of *Representing Consumers in Litigation with Debt Buyers* (Chicago Bar Ass'n 2008); *Predatory Mortgage Lending* (Ill. Inst. for Cont. Legal. Educ. 2008, 2011), author of Chapter 6, "Predatory Lending and Potential Class Actions," in *Real Estate Litigation* (Ill. Inst. For Cont. Legal Educ. 2004, 2008, 2014), *Illinois Consumer Law*, in Consumer Fraud and Deceptive Business Practices Act and Related Areas Update (Chicago Bar Ass'n 2002); *Payday Loans: Big Interest Rates and Little Regulation*, 11 Loy.Consumer L.Rptr. 174 (1999); author of *Consumer Fraud and Insurance Claims*, in Bad Faith and Extracontractual Damage Claims in Insurance Litigation, Chicago Bar Ass'n 1992; co-author of Chapter 8, "Fair Debt Collection Practices Act," *Ohio Consumer Law* (1995 ed.); co-author of *Fair Debt Collection: The Need for Private*

1

*Enforcement*, 7 Loy.Consumer L.Rptr. 89 (1995); author of *An Overview of The Fair Debt Collection Practices Act*, in Financial Services Litigation, Practicing Law Institute (1999); co-author of *Residential Mortgage Litigation*, in Financial Services Litigation, Practicing Law Institute (1996); author of *Automobile Leasing:  Problems and Solutions*, 7 Loy.Consumer L.Rptr. 14 (1994); author of *Current Trends in Residential Mortgage Litigation*, 12 Rev. of Banking & Financial Services 71 (April 24, 1996); co-author of *Illinois Consumer Law* (Chicago Bar Ass'n 1996); co-author of D. Edelman and M. A. Weinberg, *Attorney Liability Under the Fair Debt Collection Practices Act* (Chicago Bar Ass'n 1996); and author of *The Fair Debt Collection Practices Act:  Recent Developments*, 8 Loy.Consumer L. Rptr. 303 (1996), among others.  Mr. Edelman is also a frequent speaker on consumer law topics for various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conference, and the Illinois Institute for Continuing Legal Education, and he has testified on behalf of consumers before the Federal Trade Commission and the Illinois legislature.  He is a member of the Illinois bar and admitted to practice in the following courts: United States Supreme Court, Seventh Circuit Court of Appeals, First Circuit Court of Appeals, Second Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, Sixth Circuit Court of Appeals, Eighth Circuit Court of Appeals, Ninth Circuit Court of Appeals, Tenth Circuit Court of Appeals, Eleventh Circuit Court of Appeals, United States District Courts for the Northern and Southern Districts of Indiana, United States District Courts for the Northern, Central, and Southern Districts of Illinois, United States District Courts for the Eastern and Western Districts of Wisconsin, and the Supreme Court of Illinois.  He is a member of the Northern District of Illinois trial bar.

3.     **Cathleen M. Combs** is a 1976 graduate of Loyola University Law  School.  From 1984-1991, she supervised the Northwest office of the Legal Assistance Foundation of Chicago, where she was lead or co-counsel in class actions in the areas of unemployment compensation, prison law, social security law, and consumer law.  She joined what is now Edelman, Combs, Latturner & Goodwin, LLC in early 1991 and became a named partner in 1993.  Ms. Combs received an Award for Excellence in Pro Bono Service from the Judges of the United States District Court for the Northern District of Illinois and the Chicago Chapter of the Federal Bar Association on May 18, 2012.  Ms. Combs has argued over fifteen cases in the 1st, 3rd and 7th Circuit Court of Appeals and the Illinois Appellate Court, and she is a frequent speaker on consumer law topics at various legal organizations including the Chicago Bar Association, the National Consumer Law Center's Consumer Rights Litigation Conferences, and the Practicing Law Institute's Consumer Financial Services Institute. Ms. Combs is coauthor of *The Bankruptcy Practitioner's Guide to Consumer Financial Services Actions After the Subprime Mortgage Crisis* (LRP Publications 2010).  Her reported decisions include: *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc); *Sawlec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002); *Chandler v. American General Finance, Inc.*, 329 Ill. App.3d 729, 768 N.E.2d 60 (1st Dist. 2002);  *Miller v. McCalla Raymer*, 214 F.3d 872 (7th Cir. 2000);  *Bessette v. Avco Financial Services*, 230 F.3d 439 (1st Cir. 2000); *Emery v. American Gen. Fin., Inc.*, 71 F.3d 1343 (7th Cir. 1995);  *McDonald v. Asset Acceptance, LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); and  *Tocco v. Real Time Resolutions*, 48 F.Supp.3d 535 (S.D.N.Y. 2014).  She is a member of the Illinois bar and admitted to practice in the following courts:  United States District Courts for the Northern, Central and Southern Districts of Illinois, United States District Courts for the Northern and Southern Districts of Indiana, Seventh Circuit Court of Appeals, Third Circuit Court of Appeals, Fifth Circuit Court of Appeals, and Tenth Circuit Court of Appeals.  She is a member of the Northern District of Illinois trial bar.

4.     **James O. Latturner** (retired 2020) is a 1962 graduate of the University of

2

Chicago Law School.  Until 1969, he was an associate and then a partner at the Chicago law firm of Berchem, Schwanes & Thuma.  From 1969 to 1995 he was Deputy Director of the Legal Assistance Foundation of Chicago, where he specialized in consumer law, including acting as lead counsel in over 30 class actions.  His publications include Chapter 8 ("Defendants") in *Federal Practice Manual for Legal Services Attorneys* (M. Masinter, Ed., National Legal Aid and Defender Association 1989); *Governmental Tort Immunity in Illinois*, 55 Ill.B.J. 29 (1966); *Illinois Should Explicitly Adopt the Per Se Rule for Consumer Fraud Act Violations*, 2 Loy.Consumer L.Rep. 64 (1990), and *Illinois Consumer Law* (Chicago Bar Ass'n 1996).  He has taught in a nationwide series of 18 Federal Practice courses sponsored by the Legal Services Corporation, each lasting four days and designed for attorneys with federal litigation experience.  He has argued over 30 appeals, including two cases in the United States Supreme Court, three in the Illinois Supreme Court, and numerous cases in the Seventh, Third, Fifth, and Eleventh Circuits.  Mr. Latturner was involved in many of the significant decisions establishing the rights of Illinois consumers.  He is a member of the Northern District of Illinois trial bar.

     5.     **Tara L. Goodwin** is a graduate of the University of Chicago (B.A., with general

honors, 1988) and Illinois Institute of Technology, Chicago-Kent College of Law (J.D., with high honors,1991).  Ms. Goodwin was Chair of the Chicago Bar Association's Consumer Law Committee from 2007 - 2010, and she has previously been on the faculty of the Practicing Law Institute's Consumer Financial Services Institute in Chicago, speaking on issues relating to the Fair Debt Collection Practices Act and mortgage litigation. Ms. Goodwin spoke at the 2016 Conference on Consumer Finance Law on mortgage servicing issues. Ms. Goodwin has also been a frequent speaker at the Chicago Bar Association, speaking on topics such as how to assist consumers with credit reporting problems, developments in class action law and arbitration agreements in consumer contracts. **Reported Cases.** *Aleksic v. Experian Information Solutions, Inc.*, 13cv7802, 2014 WL 2769122, 2014 U.S. Dist. LEXIS 83086 (N.D.Ill. June 18, 2014); *Taylor v. Screening Reports, Inc.*, 13cv2886, 2015 WL 4052824,  2015 U.S. Dist. LEXIS 86262 (N.D.Ill. July 2, 2015); *Williams v. Chartwell Financial Services, Ltd.*, 204 F.3d 748 (7th Cir. 2000); *Hillenbrand v. Meyer Medical Group*, 288 Ill.App.3d 871, 682 N.E.2d 101 (1st Dist. 1997), later opinion, 308 Ill.App.3d 381, 720 N.E.2d 287 (1st Dist. 1999); *Bessette v. Avco Fin. Servs.*, 230 F.3d 439 (1st Cir. 2000); *Large v. Conseco Fin. Servicing Co.*, 292 F.3d 49 (1st Cir. 2002); *Flippin v. Aurora Bank, FSB*, 12cv1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Henry v. Teletrack, Inc.*, 11cv4424,  2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill.  March 7, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11cv 6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917   (N.D.Ill. Feb. 9, 2012); *Bunton v. Cape Cod Village, LLC*, 09cv1044, 2009 WL 2139441, 2009 U.S. Dist. LEXIS 57801 (C.D.Ill. July 6, 2009); *Wilson v. Harris N.A.*, 06cvJuly 9, 20205840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345  (N.D.Ill. Sept. 4, 2007); *Carbajal v. Capital One*, 219 F.R.D. 437 (N.D.Ill. 2004); *Russo v. B&B Catering*, 209 F.Supp.2d 857 (N.D.Ill. 2002);  *Romaker v. Crossland Mtg. Co.*, 94cv3328,  1996 WL 254299, 1996 U.S.Dist. LEXIS 6490  (N.D.Ill. May 10, 1996);  *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill 1996).  Ms. Goodwin is a member of the Illinois bar and is admitted in the Seventh, First, and D.C. Circuit Courts of Appeals, and the United States District Courts for the Northern and Central Districts of Illinois, and the Northern District of Indiana.  She is also a member of the Northern District of Illinois trial bar.

     6.     **Julie Clark** (neé Cobalovic) is a graduate of Northern Illinois University (B.A.,

1997) and DePaul University College of Law (J.D., 2000). **Reported Cases:** *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644, 48 N.E.3d 1060 (Ill.Sup.Ct.) **;**

*Record-A-Hit, Inc. v. Nat'l. Fire Ins. Co.,* 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Qualkenbush v. Harris Trust & Savings Bank,* 219 F. Supp.2d 935 (N.D.Ill. 2002); *Covington-McIntosh v. Mount Glenwood Memory Gardens,* 00cv186, 2002 WL 31369747, 2002 U.S. Dist. LEXIS 20026 (N.D.Ill., Oct. 21, 2002), later opinion, 2003 WL 22359626, 2003 U.S. Dist. LEXIS 18370 (N.D.Ill. Oct. 15, 2003); *Western Ry. Devices Corp. v. Lusida Rubber Prods.,* 06cv52, 2006 WL 1697119, 2006 U.S. Dist. LEXIS 43867 (N.D.Ill. June 13, 2006); *Nautilus Ins. Co. v. Easy Drop Off, LLC,* 06cv4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill. June 4, 2007); *Ballard Nursing Center, Inc. v. GF Healthcare Products, Inc.,* 07cv5715, 2007 WL 3448731, 2007 U.S. Dist. LEXIS 84425 (N.D.Ill. Nov. 14, 2007); *Sadowski v. Med1 Online, LLC,* 07cv2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill. May 17, 2008); *Sadowski v. OCO Biomedical, Inc.,* 08cv3225, 2008 WL 5082992, 2008 U.S. Dist. LEXIS 96124 (N.D.Ill. Nov. 25, 2008); *ABC Bus. Forms, Inc. v. Pridamor, Inc.,* 09cv3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy v. Promius Pharma, LLC,* 09cv2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Lab., Inc.,* 10cv1315, 2010 WL 4074379, 2010 U.S. Dist. LEXIS 108339 (N.D.Ill. Oct. 12, 2010); *Garrett v. Sharps Compliance, Inc.,* 10cv4030, 2010 WL 4167157, 2010 U.S. Dist. LEXIS 109912 (N.D.Ill. Oct. 14, 2010).

       7.    **Heather A. Kolbus** (neé Piccirilli) is a graduate of DePaul University (B.S. *cum laude,* 1997), and Roger Williams University School of Law (J.D., 2002). **Reported Cases:** *Clark v. Experian Info. Solutions, Inc.,* 8:00cv1217-22, 2004 WL 256433, 2004 U.S. Dist. LEXIS 28324 (D.S.C., Jan. 14, 2004); *DeFrancesco v. First Horizon Home Loan Corp.,* 06cv0058, 2006 WL 3196838, 2006 U.S. Dist. LEXIS 80718 (S.D.Ill. Nov. 2, 2006); *Jeppesen v. New Century Mortgage Corp.,* 2:05cv372, 2006 WL 3354691, 2006 U.S. Dist. LEXIS 84035 (N.D.Ind. Nov. 17, 2006); *Benedia v. Super Fair Cellular, Inc.,* 07cv1390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill. Sept. 26, 2007); *Gonzalez v. Codilis & Assocs., P.C.,* 03cv2883, 2004 WL 719264, 2004 U.S. Dist. LEXIS 5463 (N.D.Ill. March 30, 2004); *Centerline Equipment Corp. v. Banner Personnel Svc., Inc.,* 07cv1611, 2009 WL 1607587, 2009 U.S. Dist. LEXIS 48092 (N.D.Ill. June 9, 2009); *R. Rudnick & Co. v. G.F. Protection, Inc.,* 08cv1856, 2009 WL 112380, 2009 U.S. Dist. LEXIS 3152 (N.D.Ill. Jan. 15, 2009); *Pollack v. Cunningham Financial Group, LLC,* 08cv1405, 2008 WL 4874195, 2008 U.S. Dist. LEXIS 4166 (N.D.Ill. June 2, 2008); *Pollack v. Fitness Innovative Techs., LLC,* 08 CH 03430, 2009 WL 506280, 2009 TCPA Rep. 1858 (Ill. Cir. Ct., Jan. 14, 2009); *R. Rudnick & Co. v. Brilliant Event Planning, Inc.,* No. 09 CH 18924, 2010 WL 5774848, 2010 TCPA Rep. 2099 (Ill. Cir. Ct., Nov. 30, 2010).

       8.    **Cassandra P. Miller** is a graduate of the University of Wisconsin – Madison (B.A. 2001) and John Marshall Law School (now University of Illinois Chicago School of Law) (J.D. *magna cum laude* 2006). **Reported Cases:** *Pietras v. Sentry Ins. Co.,* 513 F.Supp.2d 983 (N.D.Ill. 2007); *Hernandez v. Midland Credit Mgmt.,* 04cv7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill. Sept. 25, 2007); *Balogun v. Midland Credit Mgmt.,* 1:05cv1790, 2007 WL 2934886, 2007 U.S. Dist. LEXIS 74845 (S.D.Ind. Oct. 5, 2007); *Herkert v. MRC Receivables Corp.,* 655 F. Supp. 2d 870 (N.D.Ill. 2008); *Miller v. Midland Credit Management, Inc.,* 08cv780, 2009 WL 528796, 2009 U.S. Dist. LEXIS 16273 (N.D.Ill. March 2, 2009); *Frydman v. Portfolio Recovery Associates, LLC,* 11cv524, 2011 WL 2560221, 2011 U.S. Dist. LEXIS 69502 (N.D.Ill. June 28, 2011).

       9.    **Associates**:

       a.    **Carly Cengher** is a graduate of the University of Oregon (B.A., 2011), the University of California (M.A., 2015), and the University of New Hampshire School of Law (J.D. 2019). She is a member of the Illinois Bar.

b. **Stephen J. Pigozzi** is a graduate of the University of Wisconsin - Madison (B.A. 2007) and Chicago-Kent College of Law (J.D. 2018). He is a member of the Illinois Bar.

c. **Julia Ozello** is a graduate of the University of Chicago (B.A. 2016) and Case Western University School of Law (J.D. 2020). She is a member of the Illinois Bar.

d. **Matthew J. Goldstein** is a graduate of Lake Forest College (B.A. 2018) and University of Illinois Chicago School of Law (J.D., May 2021).

10. The firm also has a dozen legal assistants and support staff.

11. Since its inception, the firm has recovered more than $500 million for consumers. The types of cases handled by the firm are illustrated by the following:

12. **Collection practices:** The firm has brought numerous cases under the Fair Debt Collection Practices Act, both class and individual. Decisions include: *Jenkins v. Heintz*, 25 F.3d 536 (7th Cir. 1994), aff'd 514 U.S. 291 (1995) (FDCPA coverage of attorneys); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014)(en banc); *Janetos v. Fulton, Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016); *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260 (3d Cir. 2019); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Ruth v. Triumph Partnerships*, 577 F.3d 790 (7th Cir. 2009); *Hale v. Afni, Inc.*, 08cv3918, 2010 WL 380906, 2010 U.S. Dist. LEXIS 6715 (N.D.Ill. Jan. 26, 2010); *Parkis v. Arrow Fin Servs.*, 07cv410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Foster v. Velocity Investments*, 07cv824, 2007 WL 2461665, 2007 U.S. Dist. LEXIS 63302 (N.D. Ill. Aug. 24, 2007); *Foreman v. PRA III, LLC*, 05cv3372, 2007 WL 704478, 2007 U.S. Dist. LEXIS 15640 (N.D. Ill. March 5, 2007); *Schutz v. Arrow Fin. Services*, 465 F. Supp. 2d 872 (N.D.Ill. 2006); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014), later opinion, 807 F.3d 872 (7th Cir. 2015) (collection of time-barred debts); *Siwulec v. J.M. Adjustment Servs., LLC*, 465 Fed. Appx. 200 (3d Cir. 2012) (activities of mortgage company field agents); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004); *Peter v. GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002); *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002) (attorney letters without attorney involvement); *Boyd v. Wexler*, 275 F.3d 642 (7th Cir. 2001); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000); *Johnson v. Revenue Management, Inc.*, 169 F.3d 1057 (7th Cir.1999); *Keele v. Wexler & Wexler*, 95cv3483, 1995 WL 549048, 1995 U.S.Dist. LEXIS 13215 (N.D.Ill. Sept. 12, 1995) (motion to dismiss), later opinion, 1996 WL 124452, 1996 U.S.Dist. LEXIS 3253 (N.D.Ill., March 18, 1996) (class), aff'd, 149 F.3d 589 (7th Cir. 1998); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997); *Maguire v. Citicorp Retail Services, Inc.*, 147 F.3d 232 (2nd Cir. 1998); *Young v. Citicorp Retail Services, Inc.*, 97-9397, 1998 U.S.App. LEXIS 20268, 159 F.3d 1349 (2nd Cir., June 29, 1998) (unpublished); *Charles v. Lundgren & Assocs., P.C.*, 119 F.3d 739 (9th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996), aff'g *Avila v. Van Ru Credit Corp.*, 94cv3234, 1994 WL 649101, 1994 U.S. Dist. LEXIS 16345 (N.D.Ill., Nov. 14, 1994), later opinion, 1995 WL 22866, 1995 U.S. Dist. LEXIS 461 (N.D.Ill., Jan. 18, 1995), later opinion, 1995 WL 41425, 1995 U.S. Dist. LEXIS 461 (N.D.Ill., Jan. 31, 1995), later opinion, 1995 WL 55255, 1995 U.S. Dist. LEXIS 1502 (N.D.Ill., Feb. 8, 1995), later opinion, 1995 WL 683775, 1995 U.S.Dist. LEXIS 17117 (N.D.Ill., Nov. 16, 1995); *Tolentino v. Friedman*, 833 F.Supp. 697 (N.D.Ill. 1993), aff'd in part and rev'd in part, 46 F.3d 645 (7th Cir. 1995); *Diaz v. Residential Credit Solutions, Inc.*, 965 F.Supp.2d 249 (E.D.N.Y. 2013), later opinion, 297 F.R.D. 42 (E.D.N.Y. 2014), later opinion, 299 F.R.D. 16 (E.D.N.Y. 2014); *Stubbs v. Cavalry SPV I*, 12cv7235, 2013 WL 1858587, 2013 U.S. Dist. LEXIS 62648 (N.D.Ill., May 1, 2013); *Osborn v. J.R.S.-I., Inc.*, , 949 F. Supp. 2d 807 (N.D.Ill.

5

2013); *Terech v. First Resolution Mgmt. Corp.*, 854 F.Supp.2d 537, 544 (N.D.Ill. 2012); *Casso v. LVNV Funding, LLC*,  955 F. Supp. 2d 825 (N.D.Ill.  2013); *Simkus v. Cavalry Portfolio Services, LLC*, 11cv7425, 2012 WL 1866542, 2012 U.S. Dist. LEXIS 70931 (N.D.Ill., May 22, 2012); *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513 (E.D.Mich. 2013); *Ramirez v. Apex Financial Management, LLC*, 567 F. Supp.2d 1035 (N.D. Ill. 2008);  *Cotton v. Asset Acceptance, LLC*, 07cv5005, 2008 WL 2561103, 2008 U.S. Dist. LEXIS 49042 (N.D.Ill., June 26, 2008); *Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800 (N.D.Ill. 2008);  *Martin v. Cavalry Portfolio Servs., LLC*, 07cv4745, 2008 WL 4372717, 2008 U.S. Dist. LEXIS 25904 (N.D.Ill., March 28, 2008); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07cv3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied); *Hernandez v. Midland Credit Mgmt.*, 04cv7844, 2007 WL 2874059, 2007 U.S. Dist. LEXIS 16054 (N.D.Ill., Sept. 25, 2007) (balance transfer program); *Blakemore v. Pekay*, 895 F.Supp.972 (N.D.Ill. 1995); *Oglesby v. Rotche*, 93cv4183, 1993 WL 460841,  1993 U.S.Dist. LEXIS 15687 (N.D.Ill., Nov. 5, 1993), *later opinion*, 1994 U.S.Dist. LEXIS 4866, 1994 WL 142867 (N.D.Ill., April 18, 1994); *Laws v. Cheslock*, 1999 WL 160236, 1999 U.S.Dist. LEXIS 3416 (N.D.Ill., Mar. 8, 1999); *Davis v. Commercial Check Control, Inc.*, 98cv631, 1999 WL 89556, 1999 U.S. Dist. LEXIS 1682 (N.D.Ill., Feb. 12, 1999); *Hoffman v. Partners in Collections, Inc.*, 93cv4132, 1993 WL 358158, 1993 U.S.Dist. LEXIS 12702 (N.D.Ill., Sept. 15, 1993); *Vaughn v. CSC Credit Services, Inc.*, 93cv4151, 1994 WL 449247, 1994 U.S.Dist. LEXIS 2172 (N.D.Ill., March 1, 1994), adopted, 1995 WL 51402, 1995 U.S.Dist. LEXIS 1358 (N.D.Ill., Feb. 3, 1995); *Beasley v. Blatt*, 93cv4978, 1994 WL 362185, 1994 U.S.Dist. LEXIS 9383 (N.D.Ill., July 11, 1994); *Taylor v. Fink*, 93 C 4941, 1994 WL 669605, 1994 U.S.Dist. LEXIS 16821 (N.D.Ill., Nov. 23, 1994); *Gordon v. Fink*, 93cv4152, 1995 WL 55242, 1995 U.S.Dist. LEXIS 1509 (N.D.Ill., Feb. 7, 1995); *Brujis v. Shaw*, 876 F.Supp. 198 (N.D.Ill. 1995).

13.     *Jenkins v. Heintz* is a leading decision regarding the liability of attorneys under the Fair Debt Collection Practices Act.  Mr. Edelman argued it before the Supreme Court and Seventh Circuit.  *Avila v. Rubin* and *Nielsen v. Dickerson*  are leading decisions on phony "attorney letters." *Suesz v. Med-1 Solutions, LLC* is a leading decision on the FDCPA venue requirements.  *McMahon v. LVNV Funding, LLC* is a leading decision on the collection of time-barred debts.

14.     **Debtors' rights**.  Important decisions include: *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366 (N.D.Ill. 2008) (class certified), later opinion, 07cv3840, 2008 WL 2512679, 2008 U.S. Dist. LEXIS 48722 (N.D.Ill., June 23, 2008) (summary judgment denied) (Illinois statute of limitations for credit card debts); *Parkis v. Arrow Fin Servs.*, 07cv410, 2008 WL 94798, 2008 U.S. Dist. LEXIS 1212 (N.D.Ill. Jan. 8, 2008); *Rawson v. Credigy Receivables, Inc.*,  05cv6032, 2006 WL 418665, 2006 U.S. Dist. LEXIS 6450 (N.D.Ill., Feb. 16, 2006) (same); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (collection of time-barred debts without disclosure; *Jones v. Kunin*, 99cv818, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000) (scope of Illinois bad check statute); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002) (failure to allow cosigner to take over obligation prior to collection action); *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636 (7th Cir. 2014) (en banc) (venue abuse).

15.     **Telephone Consumer Protection Act.**  The firm has brought a number of cases under the Telephone Consumer Protection Act, 47 U.S.C. §227, which prohibits "junk faxes," spam text messages, robocalls to cell phones, and regulates telemarketing practices. Important junk fax and spam text message decisions include:  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005); *Sadowski v. Med1 Online, LLC*, 07cv2973, 2008 WL 2224892, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Benedia v. Super Fair Cellular, Inc.*,

07cv01390, 2007 WL 2903175, 2007 U.S. Dist. LEXIS 71911 (N.D.Ill., Sept. 26, 2007); *Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F. Supp. 2d 768 (N.D.Ill. 2008); *ABC Business Forms, Inc. v. Pridamor, Inc.*, 09cv3222, 2009 WL 4679477, 2009 U.S. Dist. LEXIS 113847 (N.D.Ill. Dec. 1, 2009); *Glen Ellyn Pharmacy, Inc. v. Promius Pharma, LLC*, 09cv2116, 2009 WL 2973046, 2009 U.S. Dist. LEXIS 83073 (N.D.Ill. Sept. 11, 2009); *Garrett v. Ragle Dental Laboratory, Inc.*, 10cv1315, 2010 WL 3034709, 2010 U.S. Dist. LEXIS, 108339 (N.D.Ill., Aug. 3, 3010).

16.     The firm has also brought a number of cases complaining of robocalling and telemarketing abuse, in violation of the Telephone Consumer Protection Act. Decisions in these cases include: *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637 (7th Cir. 2012); *Balbarin v. North Star Capital Acquisition, LLC*, 10cv1846, 2011 WL 211013, 2011 U.S. Dist. LEXIS 686 (N.D.Ill. Jan. 21, 2011), *motion to reconsider denied,* 2011 U.S. Dist. LEXIS 58761 (N.D.Ill. 2011); *Sojka v. DirectBuy, Inc.*, 12cv9809 et al., 2014 WL 1089072, 2014 U.S.Dist. LEXIS 34676 (N.D.Ill., Mar. 18, 2014), later opinion, 35 F. Supp. 3d 996 (N.D.Ill. 2014). The firm has a leadership role in Portfolio Recovery Associates, LLC, Telephone Consumer Protection Act Litigation, MDL No. 2295, and Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation, MDL No. 2286.

17.     **Fair Credit Reporting Act:** The firm has filed numerous cases under the Fair Credit Reporting Act, which include: *Henry v. Teletrack, Inc.,* 11cv4424,  2012 WL 769763, 2012 U.S. Dist. LEXIS 30495 (N.D.Ill.  March 7, 2012).

18.     Another line of cases under the Fair Credit Reporting Act which we have brought, primarily as class actions, alleges that lenders and automotive dealers, among others, improperly accessed consumers' credit information, without their consent and without having a purpose for doing so permitted by the FCRA.  *Cole v. U.S. Capital, Inc.*, 389 F.3d 719 (7th Cir. 2004);  *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006); *Perry v. First National Bank*, 459 F.3d 816 (7th Cir. 2006).

19.     **Class action procedure:** Important decisions include *McMahon v. LVNV Funding, LLC*, 807 F.3d 872 (7th Cir. 2015);  *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076 (7th Cir. 2013); *Crawford v. Equifax Payment Services, Inc.,* 201 F.3d 877 (7th Cir. 2000); *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832 (7th Cir. 1999); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014) (mootness); *Ballard RN Center, Inc. v. Kohll's Pharmacy and Homecare, Inc.*, 2015 IL 118644, 48 N.E.3d 1060 (Ill.Sup.Ct.) (mootness),  and *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991).

20.     **Landlord-tenant:** The firm has brought more than 20 class actions against landlords to enforce tenants' rights. Claims include  failing to pay interest on security deposits or commingling security deposits. Reported decisions include *Wang v. Williams*, 343 Ill. App. 3d 495; 797 N.E.2d 179 (5th Dist. 2003); *Dickson v. West Koke Mill Vill. P'Ship*, 329 Ill. App. 3d 341; 769 N.E.2d 971 (4th Dist. 2002); and *Onni v. Apartment Inv. & Mgmt. Co.*, 344 Ill. App. 3d 1099; 801 N.E.2d 586 (2nd Dist. 2003).

21.     **Mortgage charges and servicing practices:** The firm has been involved in dozens of cases, mostly class actions, complaining of illegal charges on mortgages and improper servicing practices. These include MDL-899, *In re Mortgage Escrow Deposit Litigation*, and MDL-1604, *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*, as well as the Fairbanks mortgage servicing litigation. Decisions in the firm's mortgage cases include: *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir.  2007); *Johnson v. Thomas*, 342 Ill.App.3d

7

382, 794 N.E.2d 919 (1st Dist. 2003); *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760 (7th Cir. 2006); *Christakos v. Intercounty Title Co.*, 196 F.R.D. 496 (N.D.Ill. 2000); *Flippin v. Aurora Bank, FSB*, 12cv1996, 2012 WL 3260449 , 2012 U.S. Dist. LEXIS 111250 (N.D.Ill. Aug. 8, 2012); *Kesten v. Ocwen Loan Servicing, LLC*, 11cv6981, 2012 WL 426933, 2012 U.S. Dist. LEXIS 16917 (N.D.Ill. Feb. 9, 2012); *Johnstone v. Bank of America, N.A.*, 173 F.Supp.2d 809 (N.D.Ill. 2001); *Leon v. Washington Mut. Bank, F.A.*, 164 F.Supp.2d 1034 (N.D.Ill. 2001); *Williamson v. Advanta Mortg. Corp.*, 99cv4784, 1999 WL 1144940, 1999 U.S. Dist. LEXIS 16374 (N.D.Ill., Oct. 5, 1999); *McDonald v. Washington Mut. Bank, F.A.*, 99cv6884, 2000 WL 875416, 2000 U.S. Dist. LEXIS 11496 (N.D.Ill., June 22, 2000); *GMAC Mtge. Corp. v. Stapleton*, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992), leave to appeal denied, 248 Ill.2d 641, 610 N.E.2d 1262 (1993); *Leff v. Olympic Fed. S. & L. Ass'n*, 86cv3026, 1986 WL 10636 (N.D.Ill. Sept. 19, 1986); *Aitken v. Fleet Mtge. Corp.*, 90cv3708, 1991 WL 152533, 1991 U.S.Dist. LEXIS 10420 (N.D.Ill. July 30, 1991), later opinion, 1992 WL 33926, 1992 U.S.Dist. LEXIS 1687 (N.D.Ill., Feb. 12, 1992); *Poindexter v. National Mtge. Corp.*, 94cv45814, 1995 WL 242287, 1995 U.S.Dist. LEXIS 5396 (N.D.Ill., April 24, 1995); *Sanders v. Lincoln Service Corp.*, 91cv4542, 1993 WL 1125433, 1993 U.S.Dist. LEXIS 4454 (N.D.Ill. April 5, 1993); *Robinson v. Empire of America Realty Credit Corp.*, 90cv5063, 1991 WL 26593, 1991 U.S.Dist. LEXIS 2084 (N.D.Ill., Feb. 20, 1991); *In re Mortgage Escrow Deposit Litigation*, M.D.L. 899, 1994 WL 496707, 1994 U.S.Dist. LEXIS 12746 (N.D.Ill., Sept. 9, 1994); *Greenberg v. Republic Federal S. & L. Ass'n*, 94cv3789, 1995 WL 263457, 1995 U.S.Dist. LEXIS 5866 (N.D.Ill., May 1, 1995).

22.    The recoveries in the escrow overcharge cases alone are over $250 million. *Leff* was the seminal case on mortgage escrow overcharges.

23.    The escrow litigation had a substantial effect on industry practices, resulting in limitations on the amounts which mortgage companies held in escrow.

24.    **Bankruptcy:**  The firm brought a number of cases complaining that money was being systematically collected on discharged debts, in some cases through the use of invalid reaffirmation agreements, including the national class actions against Sears and General Electric. *Conley v. Sears, Roebuck*, 1:97cv11149 (D.Mass); *Fisher v. Lechmere Inc.*, 1:97cv3065 (N.D.Ill.). These cases were settled and resulted in recovery by nationwide classes. Cathleen Combs successfully argued the first Court of Appeals case to hold that a bankruptcy debtor induced to pay a discharged debt by means of an invalid reaffirmation agreement may sue to recover the payment. *Bessette v. Avco Financial Services*, 230 F.3d 439 (1st Cir. 2000).

25.    **Automobile sales and financing practices:**  The firm has brought many cases challenging practices relating to automobile sales and financing, including:

a.    Hidden finance charges resulting from pass-on of discounts on auto purchases. *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927 (7th Cir. 1998).

b.    Misrepresentation of amounts disbursed for extended warranties. *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689 (7th Cir. 1998); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996); *Slawson v. Currie Motors Lincoln Mercury, Inc.*, 94cv2177, 1995 WL 22716, 1995 U.S.Dist. LEXIS 451 (N.D.Ill., Jan. 13, 1995); *Cirone-Shadow v. Union Nissan, Inc.*,  955 F.Supp. 938  (N.D.Ill. 1997) (same); *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302 (N.D.Ill. 1995); *Shields v. Lefta, Inc.*, 888 F. Supp. 891 (N.D.Ill. 1995).

       c.      Spot delivery. *Janikowski v. Lynch Ford, Inc.*, 98cv8111, 1999 WL 608714, 1999 U.S. Dist. LEXIS 12258 (N.D.Ill., Aug. 5, 1999); *Diaz v. Westgate Lincoln Mercury, Inc.*, 93cv5428, 1994 U.S.Dist. LEXIS 16300 (N.D.Ill. Nov. 14, 1994); *Grimaldi v. Webb*, 282 Ill.App.3d 174, 668 N.E.2d 39 (1st Dist. 1996), leave to appeal denied, 169 Ill.2d 566 (1996).

       d.      Force placed insurance. *Bermudez v. First of America Bank Champion, N.A.*, 860 F.Supp. 580 (N.D.Ill. 1994); *Travis v. Boulevard Bank*, 93cv6847, 1994 U.S.Dist. LEXIS 14615 (N.D.Ill., Oct. 13, 1994), modified, 880 F.Supp. 1226 (N.D.Ill. 1995); *Moore v. Fidelity Financial Services, Inc.*, 884 F. Supp. 288 (N.D.Ill. 1995).

       e.      Improper obligation of cosigners. *Lee v. Nationwide Cassell*, 174 Ill.2d 540, 675 N.E.2d 599 (1996); *Taylor v. Trans Acceptance Corp.*, 267 Ill.App.3d 562, 641 N.E.2d 907 (1st Dist. 1994), leave to appeal denied, 159 Ill.2d 581, 647 N.E.2d 1017 (1995); *Qualkenbush v. Harris Trust & Sav. Bank*, 219 F. Supp. 2d 935 (N.D.Ill. 2002).

       f.      Evasion of FTC holder rule. *Brown v. LaSalle Northwest Nat'l Bank*, 148 F.R.D. 584 (N.D.Ill. 1993), later opinion, 820 F.Supp. 1078 (N.D.Ill. 1993), later opinion, 92cv8392, 1993 U.S.Dist. LEXIS 11419 (N.D.Ill., Aug. 13, 1993).

       26.      These cases also had a substantial effect on industry practices. The warranty cases, such as *Grimaldi, Gibson, Slawson, Cirone-Shadow, Chandler*, and *Shields*, resulted in the Federal Reserve Board's revision of applicable disclosure requirements, so as to prevent car dealers from representing that the charge for an extended warranty was being disbursed to a third party when that was not in fact the case.

       27.      **Predatory lending practices:** The firm has brought numerous cases challenging predatory mortgage and "payday" lending practices, both as individual and class actions. *Jackson v. Payday Financial LLC*, 764 F.3d 765 (7th Cir. 2014), *cert. denied,* 135 S.Ct. 1894 (2015); *Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572 (Ind. Sup. Ct. 2001); *Williams v. Chartwell Fin. Servs.*, 204 F.3d 748 (7th Cir. 2000); *Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525 (7th Cir. 2007); *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760 (7th Cir. 2006); *Laseter v. Climateguard Design & Installation LLC*, 931 F.Supp.2d 862 (N.D.Ill. 2013); *Hubbard v. Ameriquest Mortg. Co.*, 624 F.Supp.2d 913 (N.D.Ill. 2008); *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827 (N.D.Ill. 2007); *Pena v. Freedom Mortg. Team, Inc.*, 07cv552, 2007 WL 3223394, 2007 U.S. Dist. LEXIS 79817 (N.D.Ill., October 24, 2007); *Miranda v. Universal Fin. Group, Inc.*, 459 F. Supp. 2d 760 (N.D.Ill. 2006); *Parker v. 1-800 Bar None, a Financial Corp., Inc.*, 01cv4488, 2002 WL 215530 (N.D.Ill., Feb. 12, 2002); *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515 (E.D.Mich. 2001); *Van Jackson v. Check 'N Go of Illinois, Inc.*, 193 F.R.D. 544 (N.D.Ill. 2000), later opinion, 114 F. Supp. 2d 731 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1079 (N.D.Ill. 2000), later opinion, 123 F. Supp. 2d 1085 (N.D.Ill. 2000); *Henry v. Cash Today, Inc.*, 199 F.R.D. 566 (S.D.Tex. 2000); *Donnelly v. Illini Cash Advance, Inc.*, 00cv94, 2000 WL 1161076, 2000 U.S. Dist. LEXIS 11906 (N.D.Ill., Aug. 14, 2000); *Jones v. Kunin*, 99cv818, 2000 WL 34402017, 2000 U.S. Dist. LEXIS 6380 (S.D.Ill., May 1, 2000); *Davis v. Cash for Payday*, 193 F.R.D. 518 (N.D.Ill. 2000); *Reese v. Hammer Fin. Corp.*, 99cv716, 1999 U.S. Dist. LEXIS 18812, 1999 WL 1101677 (N.D.Ill., Nov. 29, 1999); *Pinkett v. Moolah Loan Co.*, 99cv2700, 1999 WL 1080596, 1999 U.S. Dist. LEXIS 17276 (N.D.Ill., Nov. 1, 1999); *Gutierrez v. Devon Fin. Servs.*, 99cv 2647, 1999 U.S. Dist. LEXIS 18696 (N.D.Ill., Oct. 6, 1999); *Vance v. National Benefit Ass'n*, 99cv2627, 1999 WL 731764, 1999 U.S. Dist. LEXIS 13846 (N.D.Ill., Aug. 26, 1999).

       28.      **Other consumer credit issues:** The firm has also brought a number of

other Truth in Lending and consumer credit cases, mostly as class actions, involving such issues as:

        a.     Phony nonfiling insurance. *Edwards v. Your Credit Inc.*, 148 F.3d 427 (5th Cir. 1998); *Adams v. Plaza Finance Co.*, 168 F.3d 932 (7th Cir. 1999); *Johnson v. Aronson Furniture Co.*, 96cv117, 1997 U.S. Dist. LEXIS 3979 (N.D.Ill., March 31, 1997), later opinion, 1993 WL 641342 (N.D.Ill., Sept. 11, 1998).

        b.     The McCarran Ferguson Act exemption. *Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037 (7th Cir. 1998).

        c.     Loan flipping. *Emery v. American General*, 71 F.3d 1343 (7th Cir. 1995).
*Emery* limited the pernicious practice of "loan flipping," in which consumers are solicited for new loans and are then refinanced, with "short" credits for unearned finance charges and insurance premiums being given through use of the "Rule of 78s."

        d.     Home improvement financing practices. *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill.App.3d 398, 574 N.E.2d 15 (1st Dist. 1991), leave to appeal denied, 141 Ill.2d 539, 580 N.E.2d 112; *Heastie v. Community Bank of Greater Peoria*, 690 F.Supp. 716 (N.D.Ill. 1989), later opinion, 125 F.R.D. 669 (N.D.Ill. 1990), later opinions, 727 F.Supp. 1133 (N.D.Ill. 1990), and 727 F.Supp. 1140 (N.D.Ill. 1990).

        e.     Insurance packing. *Elliott v. ITT Corp.*, 764 F.Supp. 102 (N.D.Ill. 1990), later opinion, 150 B.R. 36 (N.D.Ill. 1990).

    29.    **Automobile leases:** The firm has brought a number of a cases alleging illegal charges and improper disclosures on automobile leases, mainly as class actions. Decisions in these cases include *Lundquist v. Security Pacific Automotive Financial Services Corp.*, 993 F.2d 11 (2d Cir. 1993); *Kedziora v. Citicorp Nat'l Services, Inc.*, 780 F.Supp. 516 (N.D.Ill. 1991), later opinion, 844 F.Supp. 1289 (N.D.Ill. 1994), later opinion, 883 F.Supp. 1144 (N.D.Ill. 1995), later opinion, 91cv3428, 1995 U.S.Dist. LEXIS 12137 (N.D.Ill., Aug. 18, 1995), later opinion, 1995 U.S.Dist. LEXIS 14054 (N.D.Ill., Sept. 25, 1995); *Johnson v. Steven Sims Subaru and Subaru Leasing*, 92cv6355, 1993 WL 761231, 1993 U.S.Dist. LEXIS 8078 (N.D.Ill., June 9, 1993), and 1993 WL 13074115, 1993 U.S.Dist. LEXIS 11694 (N.D.Ill., August 20, 1993); *McCarthy v. PNC Credit Corp.*, 2:91CV00854 (PCD), 1992 U.S.Dist. LEXIS 21719 (D.Conn., May 27, 1992); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir. 1994); *Simon v. World Omni Leasing Inc.*, 146 F.R.D. 197 (S.D.Ala. 1992).

    30.    *Lundquist* and *Highsmith* are leading cases; both held that commonly-used lease forms violated the Consumer Leasing Act. As a result of the *Lundquist* case, the Federal Reserve Board completely revamped the disclosure requirements applicable to auto leases, resulting in vastly improved disclosures to consumers.

    31.    **Insurance litigation:** Often securing recovery for a class requires enforcement of the rights under the defendant's insurance policy. The firm has extensive experience with such litigation. Reported decisions in such cases include: *Record-A-Hit, Inc. v. Nat'l Fire Ins. Co.*, 377 Ill. App. 3d 642; 880 N.E.2d 205 (1st Dist. 2007); *Pietras v. Sentry Ins. Co.*, 06cv3576, 2007 WL 715759, 2007 U.S. Dist. LEXIS 16015 (N.D.Ill., March 6, 2007), later opinion, 513 F. Supp. 2d 983 (N.D.Ill. 2007); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 06cv2092, 2007 WL 2608559, 2007 U.S. Dist. LEXIS 65339 (N.D.Ill., Aug. 31, 2007); *National Fire Ins. Co. v. Tri-State Hose & Fitting, Inc.*, 06cv5256, 2007 U.S. Dist. LEXIS 45685

10

(N.D.Ill., June 21, 2007); *Nautilus Ins. Co. v. Easy Drop Off, LLC*, 06cv4286, 2007 U.S. Dist. LEXIS 42380 (N.D.Ill., June 4, 2007).

      32.    Some of the other reported decisions in our cases include: *Elder v. CoronetIns. Co.*, 201 Ill.App.3d 733, 558 N.E.2d 1312 (1st Dist. 1990); *Smith v. Keycorp Mtge., Inc.*, 151 B.R. 870 (N.D.Ill. 1992); *Gordon v. Boden*, 224 Ill.App.3d 195, 586 N.E.2d 461 (1st Dist. 1991), leave to appeal denied, 144 Ill.2d 633, 591 N.E.2d 21, cert. denied, U.S. (1992); *Armstrong v. Edelson*, 718 F.Supp. 1372 (N.D.Ill. 1989); *Newman v. 1st 1440 Investment, Inc.*, 89cv6708, 1993 U.S.Dist. LEXIS 354 (N.D.Ill. Jan. 15, 1993); *Mountain States Tel. & Tel. Co.*, v. District Court, 778 P.2d 667 (Colo. 1989); *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522 (N.D.Ill. 1988); *Haslam v. Lefta, Inc.*, 93cv4311, 1994 WL 117463, 1994 U.S.Dist. LEXIS 3623 (N.D.Ill., March 25, 1994); *Source One Mortgage Services Corp. v. Jones*, 88cv8441, 1994 WL 13664, 1994 U.S.Dist. LEXIS 333 (N.D.Ill., Jan. 13, 1994); *Wilson v. Harris N.A.*, 06cv5840, 2007 WL 2608521, 2007 U.S. Dist. LEXIS 65345 (N.D.Ill. Sept. 4, 2007). *Wendorf v. Landers*, 755 F.Supp.2d 972 (N.D.Ill. 2010); *QuickClick Loans LLC v. Russell*, 407 Ill.App.3d 46; 943 N.E.2d 166 (1st Dist. 2011), *pet. denied*, 949 N.E.2d 1103 (2011) and *Adkins v. Nestle Purina Petcare Co.*, 973 F.Supp.2d 905 (N.D.Ill. 2013).

      33.    *Gordon v. Boden* is the first decision approving "fluid recovery" in an Illinois class action. *Elder v. Coronet Insurance* held that an insurance company's reliance on lie detectors to process claims was an unfair and deceptive trade practice.

Executed at Chicago, Illinois.

                           /s/ Daniel A. Edelman
                           Daniel A. Edelman

EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)